**Ben ASHER et al., Plaintiffs,**

v.

**PACIFIC POWER AND LIGHT COMPANY, a corporation, Doe One through Doe Ten, Defendants.**

Civ. No. 9438.

United States District Court
N. D. California, N. D.

Nov. 5, 1965.

Gregory A. Harrison, Malcolm T. Dungan, John E. Sparks and Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant Pacific Power & Light Company.

Leep, Saunders & Halpin, Redding, Cal., and Albert H. Newton, Jr., Yreka, Cal., for plaintiffs.

MacBRIDE, District Judge.

This is a diversity action for damages sustained by the plaintiffs as a result of flooding connected with the disastrous floods occurring in Northern California during the latter part of 1964 and early 1965. The complaint was originally filed in the Superior Court of Siskiyou County, California, and was subsequently removed to this Court by the defendant, Pacific Power and Light Company. Title 28 U.S.C. § 1441. The plaintiffs have filed a motion to remand. Title 28 U.S.C. § 1447.

## The Facts

All of the plaintiffs reside in California. The only named defendant is incorporated in Maine and has its principal place of business in Oregon. The complaint also lists as defendants, Doe One through Doe Ten, and states that the true names of these defendants are unknown but that when they become known they will be added by amendment. This statement is set forth in the first cause of action and incorporated by reference in the second and third causes of action. Other than the above noted reference to the Does, no other mention is made of these parties except that the plural "defendants" is used in each cause of action and in the prayer.

The allegations in the three causes of action set forth in the complaint are extremely general. The first cause of action is based on inverse condemnation; the second on negligence; and the third on nuisance. The first cause of action states in pertinent part:

"IV

Defendants on or before December 22, 1964, designed, constructed, operated and maintained public improvements on the Klamath River between Klamath Lake and Iron Gate Dam.

V

The public improvements described in Paragraph IV were designed, constructed, operated and maintained in such a manner as to be a contributing cause of damage to the property of plaintiffs by flood on or about December 22, 1964."

The second cause of action states in pertinent part:

"II

On or before December 22, 1964, defendants so negligently designed, constructed, operated and maintained the public improvements described above that said facilities contributed to the causation of damages to plaintiffs' property by flood."

The third cause of action states in pertinent part:

"II

On or before December 22, 1964, defendants have occupied used and maintained the facilities described above in such a manner as to constitute a continual private and public nuisance, in that said facilities contributed to the causation of damage to the property of each plaintiff by flood. The amount of damage to the property of each plaintiff is set forth in Exhibit A.

"III

The occupation, use and maintenance of defendants' facilities constitutes a nuisance within the meaning of Civil Code § 3479 in that they are an obstruction to the free use of plaintiffs property, so as to interfere with the comfortable enjoyment of said property."

The above quoted paragraphs are the only charging allegations in the complaint.

As stated previously, the case is presently before the Court on the motion of the plaintiffs to remand to the state court. The basis for this motion is that the plaintiffs are now asserting that Doe One is Russell Poff, a resident of California, that Doe Two is The California Oregon Power Company, a California corporation, and that the presence of these two defendants in this action destroys the diversity jurisdiction of this Court. Neither of these defendants had been named or served prior to the removal of this case from the Superior Court of Siskiyou County to this Court.

It appears from the affidavit of the attorney for the plaintiffs which has been filed in connection with this motion that Russell Poff is an agent of Pacific Power and Light Company ("Pacific"). He asserts that Poff is a joint tort feasor with Pacific. It further appears from this affidavit that California Oregon Power Company ("Copco") was a California corporation which merged

with Pacific in 1961. The plaintiffs' attorney also states:

"5. That said defendants are not named as nominal or non-existent parties, as indicated by the petition of Gregory Harrison, but in fact it was contemplated that said defendants and others would be served at the time of the filing of this action in the Superior Court of the State of California. * * * *"

The question to be decided on this motion is simply whether or not, on the above stated facts, this Court should remand the case to the Superior Court of Siskiyou County, California. The same question of law, on slightly dissimilar facts, was recently decided by this Court in Fairhurst v. Heller et al. (files of this Court, Civil No. 9113). There was a hearing in that case and a decision was rendered from the bench, consequently no memorandum opinion was written. For the edification of the parties involved in that action, the law as set out hereinafter is the same as was applied in that case and with the same result.

*Opinion*

Research of the law applicable to the question presented by this and the *Fairhurst* case points up the fact that a number of devices may be employed to create or to defeat diversity jurisdiction. Hoping to eliminate any artificiality from our decision and bearing in mind Mr. Justice Frankfurter's admonition that:

"Legal doctrines are not self-generated abstract categories. They do not fall from the sky; nor are they pulled out of it. They have a specific juridical origin and etiology. They derive meaning and content from the circumstances that gave rise to them and from the purposes they were designed to serve." (Reid v. Covert, 354 U.S. 1, 50, 77 S.Ct. 1222, 1248, 1 L.Ed.2d 1148 (1955)),

we turned to a study of the policy upon which diversity jurisdiction is founded.

The study proved to be rather discouraging. To explain: We found no strong policy underlying the diversity jurisdiction of this Court. An examination of two of the sources to which we referred— Ninth Circuit Judicial Conference, 37 F.R.D. 499 (1965) and Wright, Federal Courts, § 23—will make this readily apparent. For example, according to Professor Wright one of the most compelling reasons to retain diversity jurisdiction is found in Chief Justice Taft's suggestion that, were it not for the availability of the federal forum to foreign corporations, many of them would hesitate to enter a new state. This seems to ignore the large body of cases which would allow a resident plaintiff to join a resident agent of the corporation as a joint tort feasor with the foreign corporation and thereby destroy the diversity jurisdiction of the Federal Court under the law as it now stands. Chicago, R. I. & P. R. Co. v. Dowell, 229 U.S. 102, 33 S.Ct. 684, 57 L.Ed. 1090 (1912), Chicago R. I. & P. R. Co. v. Schwyhart, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473 (1912), Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1938), Kraus v. Chicago, B. & Q. R. Co., 16 F.2d 79 (8th Cir. 1926).

The obvious and elementary policy behind diversity jurisdiction is that an out of state defendant should be entitled to a federal forum if he decides that he cannot receive a fair trial in a state court due to local prejudice. We accept this as reason enough for diversity jurisdiction even though it does seem highly unlikely that this type of prejudice exists in much quantity today.

Certainly artificial devices should not be allowed to defeat this jurisdiction (James v. National Pool Equipment Co., D.C., 186 F.Supp. 598 (1960)) regardless of the strength of the aforementioned policy. As stated in 44 Harvard Law Review 97 at 100: "Devices both for obtaining and avoiding the diversity jurisdiction are to be condemned as opening and shutting the Federal Courts on grounds entirely unrelated to the basis of the doctrine, if its soundness be conceded. If a policy of limiting the diversity jurisdiction is to be effectuated, less opportunistic methods are required."

Nor does one have to be highly perceptive to recognize that one of the culprits in our particular problem is the extremely general notice pleading [1] which has grown concomitantly with discovery in California. Were it necessary to set forth the facts upon which the plaintiff is to rely, with any degree of specificity, the motion before us would be much more simple. We will refer to this point again later in this opinion.

Finally, before discussing the law that we find applicable to this case, it occurs to the Court that the form of the motion alone gives some clue to the primary purpose of the plaintiff in filing this motion. This is a motion to remand. It is not a motion to join new defendants under Rule 21 of the Federal Rules of Civil Procedure. The supposed purpose in joining any defendant in a law suit is to enable the plaintiff to recover from such defendant. Apparently the plaintiffs here are only concerned with recovering from these two defendants in a state action as they have made no motion to join them if the case remains in this Court (that joinder here is possible see Hardenbergh v. Ray, 151 U.S. 112, 14 S.Ct. 305, 38 L.Ed. 93 (1893), Murphy v. Kodz, 351 F.2d 163 (9th Cir. 1965).

To reiterate the point which is the major premise in deciding this motion: we should not allow artificial devices to destroy the diversity jurisdiction of this Court. If then we find the attempt of the plaintiffs to join these two defendants to be such an artificial device, thus fulfilling the requisite minor premise, we will retain jurisdiction. The problem, of course, is determining whether or not the plaintiffs' conduct fulfills this definition.

■ There are numerous cases decided in this Circuit involving this question on facts similar to those before us. Grigg v. Southern Pacific Company, 246 F.2d 613 (9th Cir. 1957), Molnar v. National Broadcasting Company, 231 F.2d 684 (9th Cir. 1956), Thiel v. Southern Pacific Company, 126 F.2d 710 (9th Cir. 1942), Southern Pacific Company v. Haight, 126 F.2d 900 (9th Cir. 1942), Glucksman v. Columbia Broadcasting System, Inc., 219 F.Supp. 767 (S.D.Cal. 1963), Scurlock v. American President Lines, 162 F.Supp. 78 (N.D.Cal.1958), Hill v. United Fruit Company, 149 F. Supp. 470 (S.D.Cal.1957), Pacific Gas & Electric Co. v. Fibreboard Products, 116 F.Supp. 377 (N.D.Cal.1953), Grosso v. Butte Electric Ry. Co. et al., 217 F. 422 (D.C.Mont.1914). A fair reading of these cases determines that the law regarding the destruction of diversity by identifying fictitious defendants revolves primarily around the degree of specificity with which the "does" are charged in the complaint as it exists at the time of removal. To illustrate by comparison: The most obvious case in which the use of a fictitiously named defendant would not destroy diversity is where the "doe" is mentioned in the caption of the complaint but is not charged or referred to in any way in the body of the complaint. Grigg v. Southern Pacific Company, supra. On the other hand, diversity would be destroyed if the "doe" was charged in the complaint in such a manner that

---

1. Although California pleading is liberal, it is not as liberal as the plaintiff apprehends it to be. The purpose of the California provision permitting the use of fictitious names (California Code of Civil Procedure § 474) is to "enable a plaintiff who has in mind a person he deems a proper or necessary party defendant, but of whose true name he is ignorant, to bring suit alleging the fact of his ignorance of the true name of the party, designating him by any name, and that when his true name is ascertained to amend his pleading accordingly. In other words, plaintiff's ignorance of the true name must be real and not feigned." Herschfelt v. Knowles-Raymond etc. Co., 130 Cal.App.2d 347, 279 P.2d 104 (1955). Further, "The purpose of the section is to help a plaintiff who truly does not know the name of someone against whom he states a cause of action, in order to prevent running of the statute of limitations." Lipman v. Rice, 213 Cal.App.2d 474, 28 Cal.Rptr. 800 (1963). The plaintiff's attorney in the affidavit before us admits to the knowledge of these parties prior to the filing of the complaint in Siskiyou County, California. (See statement of facts, supra.)

his actionable conduct, his capacity and perhaps his physical appearance were fully and factually described. Grosso v. Butte Electric Ry. Co. et al., supra. Thus, whether or not the joinder of the resident "doe" will destroy diversity, depends on the degree of specificity with which the complaint charges the "doe" with actionable conduct. These cases seem to say that, for purposes of determining diversity, the court should only consider those parties against whom the plaintiff genuinely wishes to proceed, and that a good test of this intent is an examination of the complaint at the time the petition for removal is filed. To more fully understand the above, perhaps it would be well to recall at this point that: (1) What we are here attempting to do is to eliminate the maximum amount of artificiality when determining whether or not we have diversity jurisdiction, and; (2) That numerous cases allow the destruction of this jurisdiction by the joinder of a resident agent joint tort feasor, with the foreign corporation by whom he is employed. Chicago, R. I. & P. R. Co. v. Dowell, supra, and the cases cited therewith. Add to this the aforementioned troublemaker, notice pleading, and the entire problem comes into focus.

Were the plaintiff required to set forth the facts upon which he founds his cause of action the problem would be solved. Each participant would normally be identified by his acts regardless of his name. In such a situation each person against whom the plaintiffs genuinely seek to obtain a judgment would be named as a defendant, actually or fictitiously, and would be readily identifiable from the complaint.

■ The test as set forth by the above cited cases (Grigg v. Southern Pacific Company, et seq.) is a good one. For even though the complaint may state a cause of action against the fictitiously named defendants in the state court,[2] this alone should not defeat our diversity jurisdiction. If an examination of the allegations in the complaint reveals them to be so general that they give no clue as to whom they could pertain, then the parties sought to be joined under these allegations should be disregarded for the purposes of determining diversity jurisdiction. Grigg v. Southern Pacific Company, supra. Were it otherwise, the use and function of notice pleading would grow far beyond the unreasonable scope it has already attained.

■■ An application of this test to the case before us reveals that the defendant, Russell Poff, should not be considered in determining whether or not we have diversity jurisdiction.

The allegations in the complaint, as heretofore set forth, are extremely general. They could apply with equal force to any employee of Pacific, or for that matter to anyone, employee or otherwise, who could in any way be considered to have been involved in the acts which are the subject of this complaint.

The inclusion of the word "defendants" is the only reference to the "does" in the charging portions of the complaint. Two different examples will illustrate the meaningless generality of this word as it is used here by the plaintiffs.

The first cause of action is based on inverse condemnation and charges the "defendants" with liability. An inverse condemnation action in California is based on article 1, section 14 of the California Constitution which provides that private property shall not be taken or damaged for the public use without just compensation. Frustuck v. City of Fairfax, 212 Cal.App.2d 345, 28 Cal.Rptr. 357 (1963). Furthermore, the party to be held liable under this constitutional provision is the public agency authorizing the work which is the cause of the damage. Heimann v. City of Los Angeles, 30 Cal.2d 746, 185 P.2d 597 (1947). The liability which forms the basis for this cause of action is not grounded upon negligence but upon the above mentioned constitutional provision. Hume v. Fresno Irr. Dist., 21 Cal.App.2d 348, 69 P. 2d 483 (1937). Thus the officers, agents

---

2. Although this is not true in this case, see footnote [1] supra.

and contractors of the public agency are not liable under this cause of action. Heimann v. City of Los Angeles, supra, Hume v. Fresno Irr. Dist., supra.

The point we seek to make is that there can be only one party liable under this cause of action: Pacific Power and Light Company. What meaning then can we ascribe to the use of the word "defendants" in this cause of action?

Next, the plaintiffs' third cause of action is based upon nuisance and contains the following language:

"The occupation, use and maintenance of defendants' facilities constitutes a nuisance within the meaning. * * *"
The selection of the plural possessive here can only indicate an indiscriminate use of the word "defendants" without any thought being given as to whom it might apply. Certainly they didn't intend "Russell Poff's facilities."

From the above the Court concludes that the complaint,[3] as it existed at the time of the filing of the petition for removal, reflects only one party against whom the plaintiffs, at that time, genuinely desired to obtain a judgment. We will, therefore, consider only that party, namely, Pacific Power and Light Company, in determining whether or not we have diversity jurisdiction.

■ The conclusion we reached with reference to Poff would apply with equal force to Copco except for the fact that Copco cannot be joined for reasons which are much more elementary. A complete answer to the question of joining this defendant is that, subsequent to its merger with Pacific, Copco is not liable to suit in California unless the action was pending prior to the merger. J. C. Peacock, Inc. v. Hasko, 184 Cal.App.2d 142, 7 Cal.Rptr. 490 (1960), California Corporations Code § 4116. This case was initiated subsequent to the merger.

A more cogent answer, in view of the fact that Pacific acquires all of Copco's assets and assumes all of its debts and liabilities (California Corporations Code § 4116), is that there is no reason for joining this defendant except to destroy this Court's diversity jurisdiction.

Finally, we turn to the question of whether or not Pacific is a foreign corporation that can confer diversity jurisdiction on this Court. The plaintiffs do not contend that Pacific is not a foreign corporation because it might be either a California corporation or have its principal place of business in California. Rather they maintain[4] that the merger of Copco into Pacific destroys the latter's foreign status.

■■ This contention is logical and reasonable, but it is not the law. The present rule requires that for the purposes of determining diversity, a corporation can only be a citizen of two states, that of its incorporation and that where its principal place of business is located. Kaufman v. General Insurance Company of America, 192 F.Supp. 238 (S.D.Cal. 1961).

■ In this case the merger of Copco into Pacific terminated the existence of Copco. California Corporations Code § 4116. In spite of the fact that Pacific took over Copco's operations in California and continued them after the merger, nevertheless the only remaining corporation is Pacific. Its continued corporate existence is under the laws of Maine, the state of its incorporation. California Corporations Code § 4118. Akwell Corp. v. Eiger, 141 F.Supp. 19 (S.D.N.Y.1956). Pacific has, therefore, the foreign status required for diversity jurisdiction.

To return to the policy discussion in which we indulged earlier, and conceding that one of the main purposes of diversity jurisdiction is to protect the stranger from local prejudice, we can't help but observe that the law as it now exists has lost sight of this purpose.

---

3. As stated previously, we will consider what is contained in the complaint as determinative.

4. This contention was not made in the brief filed in this action, it was asserted for the first time during the oral argument of this motion.

The American Law Institute in their Proposed Final Draft No. 1 (Study of the Division of Jurisdiction Between State and Federal Courts, § 1302(b), April 19, 1965) has recommended that a corporation be deemed a citizen, for diversity purposes, of each state in which it has maintained a "local establishment" for more than two years. This makes a good deal of sense and is much more compatible with what little basis there is for diversity jurisdiction.

 The corporation involved in this case is certainly no stranger to California, and while we realize that for this case a jury composed of flood victims may not be the ideally impartial one, this is not the prejudice against which diversity was designed to protect. In spite of the foregoing and even though Pacific is a corporation regularly doing business in California, the law in its present posture gives to this defendant the right to a federal forum. This Court questions the policy foundations for that right. Nevertheless, we have no alternative but to deny the plaintiffs' motion to remand.

It is, therefore, ordered that the motion of the plaintiffs to remand this case to the Superior Court of Siskiyou County, California, be, and the same is hereby, denied.