**Davenie Johanna HEATHERTON also known as Joey Heatherton, Plaintiff,**

v.

**PLAYBOY, INC., and Does I Through XX, Inclusive, Defendants.**

**No. 73–979–AAH.**

United States District Court,
C. D. California.

July 20, 1973.

witnesses, he is hereby directed to promptly supplement answers under this Order in accordance with Fed.R.Civ.P. 26(e)(1)(B).

David H. Greenberg and David Meyer, Gittler, Greenberg & Magee, Beverly Hills, Cal., for plaintiff.

Paul P. Selvin, Selvin, Cohn & Barth, Los Angeles, Cal., Devoe, Shadur, Krupp, Miller, Adelman & Hamilton, Chicago, Ill., for defendant Playboy Enterprises, Inc.

## MEMORANDUM AND ORDER OF REMAND TO THE STATE COURT

HAUK, District Judge.

The December 1972 issue of *Playboy* magazine featured an article entitled "Sex Stars of 1972". Written by Arthur Knight and Hollis Alpert, it was a lively run-down of Hollywood personalities, some of whom are on the rise and others who already have peaked. As Messrs. Knight and Alpert commented right at the start, "The aging star establishment and last year's hot new properties are challenged by a bumper crop of even hotter, newer names." [1]

Accompanying their essay were 48 photographs, showing celebrities in various stages of undress. Twenty of these pictures were of actresses, 28 of actors. One of the shots was Joey Heatherton.[2] Nude from the waist up, the Plaintiff glares at someone off camera, while the caption on the following page reads as follows:

"STANDARD BEARERS: The three-some at the far left, hardy perennials all, are reknowned less for histrionic than anatomical contributions to film. From the top, they're Jill St. John, Sean Connery's love interest in Diamonds are Forever; Joey Heatherton, one of Richard Burton's in this shot from Bluebeard; and Stella Stevens, a Playmate who rose to semi-stardom, seen this year in Slaughter (with Jim Brown) and The Poseidon Adventure (with Gene Hackman)."

Of all the pictures on this particular page (which incidentally includes Eliza-

---

1. Playboy, December, 1972, at 207.

2. *Id.*, at 214.

beth Taylor and Sophia Loren), Joey Heatherton's is the most revealing. However, several of her colleagues on other pages are even more scantily clad.[3]

Miss Heatherton apparently did not like the free publicity Playboy gave her. Claiming that the magazine had no permission to use the snap from Bluebeard, she filed suit on March 14, 1973, in the Superior Court of California, County of Los Angeles. Her complaint named Playboy, Inc.[4] and "Does I through XX, inclusive," and alleged unlawful copying, appropriation, publication, release and distribution of the half-nude picture, and sought damages for invasion of privacy and deprivation of her rights under California Civil Code Section 3344.[5]

3. See, e. g., Barbara Hershey, id., at 208; Victoria Principal, id., at 210; and Liv Lindeland, id., at 217.

4. This is erroneous; the actual name of the Defendant is Playboy Enterprises, Inc. We have, however, preserved the case style as it occurs in the record.

5. California Civil Code § 3344 (West's 1973 Cumulative Pocket Part) :

§ 3344. Use of another's name, photograph, or likeness for advertising or solicitation purposes

(a) Any person who knowingly uses another's name, photograph, or likeness, in any manner, for purposes of advertising products, merchandise, goods or services, or for purposes of solicitation of purchases of products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof. In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount no less than three hundred dollars ($300).

(b) As used in this section, "photograph" means any photograph or photographic reproduction, still or moving, or any videotape or live television transmission, of any person, such that the person is readily identifiable.

(1) A person shall be deemed to be readily identifiable from a photograph when one who views the photograph with the naked eye can reasonably determine that the person depicted in the photograph is the same person who is complaining of its unauthorized use.

(2) If the photograph includes more than one person so identifiable, then the person or persons complaining of the use shall be represented as individuals rather than solely as members of a definable group represented in the photograph. A definable group includes, but is not limited to, the following examples: a crowd at any sporting event, a crowd in any street or public building, the audience at any theatrical or stage production, a glee club, or a baseball team.

(3) A person or persons shall be considered to be represented as members of a definable group if they are represented in the photograph solely as a result of being present at the time the photograph was taken and have not been singled out as individuals in any manner.

(c) Where a photograph or likeness of an employee of the person using the photograph or likeness appearing in the advertisement or other publication prepared by or in behalf of the user is only incidental, and not essential, to the purpose of the publication in which it appears, there shall arise a rebuttable presumption affecting the burden of producing evidence that the failure to obtain the consent of the employee was not a knowing use of the employee's photograph or likeness.

(d) For purposes of this section, a use of a name, photograph or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for purposes of advertising or solicitation.

(e) The use of a name, photograph or likeness in a commercial medium shall not constitute a use for purposes of advertising or solicitation solely because the material containing such use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of the complainant's name, photograph or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for purposes of advertising or solicitation.

(f) Nothing in this section shall apply to the owners or employees of any medium used for advertising, including,

Almost two months later Defendant Playboy Enterprises, Inc. (hereinafter referred to as PEI) petitioned to remove the case to the United States District Court for the Central District of California. Heatherton moved on May 8 to remand to the State Court.

■ Ten days later, the Plaintiff moved for leave to amend her complaint. "Plaintiff sued certain parties defendant by the fictitious names of DOES I through XX, inclusive," her motion stated, "requesting and reserving leave of court to amend the complaint to show said defendants by their true names and capacities when ascertained." She went on to say that "[o]n May 3, 1973, Defendant Playboy Enterprises, Inc., removed this case to the Federal District Court for the Central District of California . . . On May 4, 1973, Plaintiff's attorney, David H. Greenberg, as shown by his affidavit, learned for the first time of the existence of Sunset News Company, a California corporation who is a party joinable to this action . . ." Joey Heatherton seeks this amendment "so that all parties liable to her for damages and other injuries arising out of the publication of the magazine, photograph and text which are the subject of this action, may be joined in a single lawsuit in order to avoid a multiplicity of actions and to obviate the expense and inconvenience of bringing a separate suit in state court against Sunset News Company Inc. and other defendants."

On May 24 PEI filed its opposition to the motions to remand and to amend the complaint. A hearing occurred Monday, June 4; and the matter was continued until July 9, primarily to allow Miss Heatherton to lodge a proposed amended complaint. Joey Heatherton filed her amended complaint and PEI moved to strike it. The motions came on for final determination on July 9.

■ The order in which these motions must be considered is important. We should decide first whether Plaintiff's motion to amend her complaint should be granted and then consider whether removal was proper. Put another way, we only have jurisdiction to determine if we have jurisdiction. 28 U.S.C. §§ 1332, 1441(c), 1446; McRae v. Arabian American Oil Company, 293 F. Supp. 844, 846 (SDNY 1968).

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND PEI'S MOTION TO STRIKE THE AMENDMENT TO THE COMPLAINT**

The most fundamental rule allowing Miss Heatherton to amend her complaint is F.R.Civ.P. 15(a), which allows one amendment as a matter of course. Rule 21 also allows the Court to drop or add parties on either side's motion or on the court's initiative at any stage of the action and on such terms as are just.

The point here, of course, is that Plaintiff has added Sunset News Company, a California corporation, not just as a ploy to defeat diversity jurisdiction, but because Sunset News Corporation was at the time of the alleged tort the distributor of *Playboy* magazine in the greater Los Angeles area. It is implicit in the timing that Joey Heatherton had cause to name Sunset News Company as "Doe I" for "distributing" the magazine, because when her attorney learned for the first time of Sunset News' existence,

but not limited to, newspapers, magazines, radio and television stations, billboards, and transit ads, by whom any advertisement or solicitation in violation of this section is published or disseminated, unless it is established that such owners or employees had knowledge of the unauthoirzed use of the person's name, photograph, or likeness as prohibited by this section.

(g) The remedies provided for in this section are cumulative and shall be in addition to any others provided for by law.

(Added by Stats.1971, c. 1595, p. 3426, § 1.)

on May 4, 1973, he immediately sought leave to substitute that company for "DOE I" Defendant.[6] Such a move is not in and of itself an evil evasion of federal jurisdiction. At least one legal scholar has indicated that "While there is a statutory policy against the 'creation' of federal jurisdiction [28 U.S.C. § 1359], there is no correlative statutory policy against an *avoidance.*" 1A Moore's Federal Practice ¶ 0.158, p. 421. See Note: Devices to Avoid Diversity Jurisdiction, 33 Harv.L.Rev. 97 (1930). Moreover, " . . . apart from a rule against fraudulent joinder of defendants, the federal courts have not evolved any judicial rule against avoidance." *Id.,* at 421–2. And nobody is claiming that Joey Heatherton's amended complaint against Sunset News is fraudulent.

■ This Court is quite aware of Professor Moore's statement regarding the addition of parties after removal: "There are cases that sanction an ex parte amendment by Plaintiff and give an affirmative answer . . . With deference, we believe these are not sound; and the sound rule is that established by *contra* authority." *Id.,* ¶ 0.161[1], at 530. But his treatise prudently goes on to say that " . . . in the exercise of a sound discretion the district court may permit a new party to be added, although his citizenship destroys diversity and requires a remand." *Id.;* Ingersoll v. Pearl Assurance Co., 153 F.Supp. 558 (N.D.Cal.1957); Schindler v. Wabash R. Co., 84 F.Supp. 319 (W.D.Mo.1949).

· Making use of our discretion, we feel that the Plaintiff's amendment is not a mere device used only to win a remand. It is a genuine attempt not to "add" a party but actually to change the name of a distributor (Doe I to Sunset News

Co.) who in fact is potentially liable as a distributor of the half-nude photograph of Joey Heatherton.

PEI cites several cases to support its position, chief among which is Asher v. Pacific Power and Light Co., 249 F. Supp. 671 (N.D.Cal.1965). There the plaintiffs, all California residents, named a collection of John Does as well as an Oregon defendant. The defendant petitioned for removal under 28 U.S.C. § 1441. Then plaintiffs moved to remand on the grounds that they now had merely asserted that one of the Does was a California resident and another was a California corporation. While admitting that a number of legitimate devices may be employed to create or destroy diversity jurisdiction, the court nevertheless did not permit the plaintiffs to use a plain subterfuge to defeat jurisdiction. "Certainly artificial devices should not be allowed to defeat this jurisdiction . . . regardless of the strength of the aforementioned policy." *Id.,* at 674. Judge MacBride went on to say that " . . . one of the culprits in our particular problem is the extremely general notice pleading which has grown concomitantly with discovery in California." *Id.,* at 675. This of course encompasses the practice of including John Does in a complaint. *Id.,* n. 1. At any rate, the antipathy Judge MacBride has toward artificial devices was the "major premise" in deciding this case.

With all due deference to Judge MacBride, we feel that his case is distinguishable from ours.

We know by affidavit that Joey Heatherton's attorney honestly did not know that Sunset News Company existed until shortly after filing his complaint. Once aware, he immediately

---

6. The move tallies with the original wording of Miss Heatherton's complaint, that "[o]n or about December, 1972, Defendants released the December 1972 issue of Playboy magazine to the public, and *dis-* *tributed* said magazine throughout the world and *more particularly in this state.*" [Emphasis added], Page 3, Paragraph 10, line 3 of Plaintiff's complaint.

moved to amend. In *Asher*, however, the plaintiff's attorney admitted in an affidavit that he was cognizant of the additional parties *before* filing his complaint in Superior Court. *Asher, supra,* at p. 675, n. 1.

In *Asher* the plaintiffs were only interested in retaining the Does if the case were remanded. *Id.*, at 675. Here Joey Heatherton immediately tried to amend her complaint to include Sunset News, wishing to retain that corporation in either tribunal and both tribunals.

In *Asher* one of the corporate Doe defendants had merged with the named defendant, terminating the Doe's existence. The other Doe was found by the court not to be liable under any of the alleged causes of action. *Id.*, at 676–677. But here Sunset News Company is an ongoing entity and is potentially liable through its own independent conduct.

These differences cannot be dismissed as minor. They demonstrate that the attempted substitutions in *Asher* were nothing more than artificial devices to break down diversity. While not inherently repugnant in the eyes of the law, they provide an understandable reason for refusing to remand a case. Joey Heatherton's amendment is more realistic. Sunset News' potential liability is not speculation and her lawyer's explanation for the amendment is inherently credible.

The case of Thiel v. Southern Pacific Company, 126 F.2d 710 (9th Cir. 1942) is similarly distinguishable. The Plaintiff tried to amend his complaint to name two defendants in place of the first and second John Does; however, he never stated a cause of action against either one. *Id.*, at 712.

Sunset News Company may well be liable to Joey Heatherton for distributing the photograph in question. To force her into two separate lawsuits would be unfair, not only to her, but also to the crowded judicial calendars in both Federal and State Court. This, coupled with the fact that we are a court of limited jurisdiction, is ample persuasion. Miss Heatherton has the right to amend her complaint. F.R.Civ. P. 15(a), 19(a), 20(a), 21.

## PLAINTIFF'S MOTION TO REMAND

The short answer to this question is that once we allow Miss Heatherton to amend her complaint, there is no complete diversity and the case must be returned to the Superior Court. It should be noted, though, that even without the amendment the effect of naming John Does in a complaint can vary, and it is not the absolute rule that fictitious names are disregarded. The status of the parties, whether formal or otherwise, does not depend upon the names by which they are designated, but on their relation to the case, its effect on their interest, and whether judgment is sought against them. When the cause of action is against them and substantial relief is sought against them, they are real parties in interest. Although designated by the Doe label, their citizenship is vital on removal. Grosso v. Butte Electric Ry. Co., 217 F. 422 (D.C.Montana, 1914). Similarly the citizenship of a Doe defendant could not be disregarded in a diversity action in federal court where the plaintiff relied on an uninsured motorist law on the ground that the insurer was the real party in interest, since the insurer was held not to be the real party in interest at that stage of the proceedings when motions were made to dismiss the action on the ground of failure of diversity jurisdiction, although the insurer might eventually turn out to be the real party in interest. Johnson v. General Motors Corporation, 242 F.Supp. 778, 780 (E.D.Va. 1965). "Whether or not the joinder of the resident 'doe' will destroy diversity, depends on the degree of specificity

**378**

with which the complaint charges the 'doe' with actionable conduct." *Asher, supra,* 249 F.Supp. at 676.

Our previous description of the complaint is relevant here: Joey Heatherton refers to plural defendants. They allegedly not only used the half-nude picture without her permission, but they assertedly distributed it. Sunset News Company, or Doe I, Heatherton charges, participated in the transaction. The gravamen of her action accuses not only Hugh Hefner's journal but its distributors as well.

■ In disposing of this matter, we take notice of the general judicial rule that removal statutes are to be strictly construed *against* removal and in favor of remand. Bradford v. Mitchell Brothers Truck Lines, 217 F.Supp. 525, 528 (N.D.Cal.1963); Shamrock Oil & Gas Corp. v. Sneets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

And finally, Section 1447(c) of Title 28 U.S.C. permits us at *any* time before *final* judgment to remand the case if it appears that it was removed improvidently and without jurisdiction. This safeguard is applicable here and we invoke it.

Accordingly,

1) Plaintiff Joey Heatherton's motion for leave to file an amended complaint is granted.

2) Defendant PEI's motion to strike the amendment to the complaint is denied.

3) Plaintiff's motion to remand to the Superior Court, County of Los Angeles, is granted.

4) Each party shall bear his own costs. This memorandum shall also constitute findings of fact and conclusions of law in accordance with Rule 52, F.R. Civ.P.

The order shall issue accordingly and forthwith be served by the Clerk upon the Clerk of the Superior Court and all counsel for all the parties hereto.