Carol JONES, as Personal Representative of the Estate of Jon W. Jones, Deceased, Plaintiff–Appellee,

v.

Harold W. GRIFFITH, M.D., Defendant–Appellant.

No. 88–2570.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1989.

Decided March 30, 1989.

James P. Fenton, Barrett & McNagny, Ft. Wayne, Ind., for defendant-appellant.

Daniel A. Roby, Roby & Hood, Ft. Wayne, Ind., for plaintiff-appellee.

Before CUMMINGS, POSNER, and MANION, Circuit Judges.

POSNER, Circuit Judge.

Dr. Harold Griffith, the potential defendant in a prospective malpractice case, appeals from a "preliminary determination" made by a federal district court under the Indiana Medical Malpractice Act (Ind.Code §§ 16–9.5–1–1 *et seq.*). See 688 F.Supp. 446 (N.D.Ind.1988). Preliminary determinations (as the name implies) ordinarily lack finality, and so are not appealable in the federal judicial system. But we shall see that under the Malpractice Act the preliminary determination is the last order made by the trial court in the proceeding before it (a proceeding to *obtain* a preliminary determination), as well as the first one. It is therefore final and appealable, even though, as we shall also see, it may be preliminary or ancillary to a proceeding in another, or indeed the same, forum. *University Life Ins. Co. of America v. Unimarc Ltd.*, 699 F.2d 846, 848–50 (7th Cir. 1983); *Graphic Communications Union v. Chicago Tribune Co.*, 779 F.2d 13, 14–15 (7th Cir.1985).

The problem is not our jurisdiction but the district court's. Does a federal district court have the power to make a preliminary determination under the Indiana Malpractice Act? That is a novel and difficult question.

Jon W. Jones died in an Indiana hospital after Dr. Griffith performed angiography on him. (This is a procedure in which a dye is injected into the bloodstream in order to permit x-ray study of the blood vessels.) At the time, Griffith, like Jones, was an Indiana resident, but he has since moved to California. Mrs. Jones—Jon Jones's widow and legal representative—claims first that Griffith failed to explain the dangers of the procedure to her husband and obtain his informed consent to it, and second that when Mr. Jones went into shock immediately following the angiography, Dr. Griffith gave him an intramuscular injection of a stimulant when he should have given him an intravenous injection.

Mrs. Jones wanted to sue Griffith for malpractice but could not do so immediately because Griffith is covered by the Indiana Medical Malpractice Act. Enacted in 1975 in an effort to reduce the soaring costs of malpractice insurance, see *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 379–80, 404 N.E.2d 585, 589–90 (1980); *Sue Yee Lee v. Lafayette Home Hospital Inc.*, 410 N.E.2d 1319, 1324 (Ind.App.1980), the Act entitles a physician to coverage if he agrees to buy $100,000 in malpractice insurance and to pay a fee to the Indiana Department of Insurance. Coverage buys the physician two things (so far as relevant to this case). First, the Act caps his liability at $500,000, with all but the first $100,000 (which is covered by the physician's malpractice insurance) being paid by the insurance department. Second, and more pertinent, anyone who wants to sue a covered physician for malpractice for $15,000 or more must first file the proposed complaint in the lawsuit both with the commissioner of insurance, Ind.Code §§ 16–9.5–9–1(c), 2(a), and with a Medical Review Panel that consists of three physicians selected by the parties, plus an attorney appointed by the commissioner to be the nonvoting chairman of the panel. § 16–9.5–9–3. The parties make written submissions to the panel, and the physician members review the submissions and may, but need not, pick one or more of four (actually five) opinions to render: the evidence supports a conclusion that the prospective defendant (for remember that only a *proposed* complaint has been filed at this point) was negligent; the evidence does not support such a conclusion; there is a triable issue not requiring expert opinion; the defendant's conduct was or was not a cause of the plaintiff's injury. § 16–9.5–9–7. The party who prevails before the panel pays the panel members' fees and expenses. § 16–9.5–9–10(c). After the opinion is rendered, the plaintiff can go ahead and file his malpractice suit. The review panel's opinion is admissible in that suit, although not conclusive, and members of the panel are required to testify if either side calls them as witnesses. § 16–9.5–9–9.

Before the Medical Review Panel that had been convened to consider Mrs. Jones's proposed complaint had completed its deliberations and rendered an opinion—indeed, before Mrs. Jones and Dr. Griffith had

made their written submissions to the panel—Mrs. Jones instituted this diversity action in federal district court against Griffith. It is not a suit in a conventional sense. It was kicked off not by the filing of a complaint but by the filing of Jones's *proposed* complaint together with a motion asking the court to make a preliminary determination under the Indiana Malpractice Act. For this unusual mode of proceeding Mrs. Jones relied on a section of the Act which provides that during the period between the filing of the proposed complaint and the issuance by the Medical Review Panel of its opinion, "a court having jurisdiction over the subject matter and the parties to a proposed complaint ... may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, (1) preliminarily determine any affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana rules of procedure; or (2) compel discovery in accordance with the Indiana rules of procedure; or (3) both." Ind.Code § 16–9.5–10–1. (The institution of an action for a preliminary determination stays proceedings before the Medical Review Panel. § 16–9.5–10–4.) Although Jones had not named the insurance commissioner or the chairman of the Medical Review Panel in her proposed complaint or accompanying motion in the district court, she served these papers on both of those gentlemen, as well as, of course, on Griffith. They answered by disclaiming any interest in the merits or in the outcome of Mrs. Jones's complaint against Dr. Griffith.

Griffith moved to dismiss the district court proceeding on a number of grounds, including an absence of complete diversity of citizenship (both the insurance commissioner and the chairman of the Medical Review Panel are, like the plaintiff, citizens of Indiana). In the alternative he asked the district judge to abstain in favor of the Indiana courts, which have not yet interpreted the parts of the Medical Malpractice Act on which Jones wanted the panel instructed. The district judge denied the motion to dismiss or abstain, and proceeded to issue his instructions. There were two. The first was that the panel was to find that there was a triable issue between Jones and Griffith, not requiring expert opinion, on the issue of informed consent (Jones's first malpractice claim). The second was that on the issue of the causal relation between the alleged malpractice and Mr. Jones's death, the panel was to use a "substantial factor" definition of cause. The district judge based these instructions on his interpretation of Indiana cases that had dealt with these issues, although not under the Medical Malpractice Act.

■ We agree with the district judge that the requirement of complete diversity of citizenship, see *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Fidelity & Deposit Co. v. City of Sheboygan Falls,* 713 F.2d 1261, 1264 (7th Cir. 1983), was satisfied despite the fact that Mrs. Jones served her pleadings in the district court—her motion for preliminary determination and her proposed complaint—on the insurance commissioner and the panel's chairman, both residents of Indiana as we have said. The Malpractice Act required her to serve them. Ind.Code § 16–9.5–10–2. The question whether serving someone makes him a party, even when the complaint doesn't designate him as a party—and neither Mrs. Jones's motion nor her proposed complaint purports to make either the panel chairman or the insurance commissioner a party—is one of those fundamental legal questions on which there is a curious dearth of authority or discussion. The Federal Rules of Civil Procedure assume rather than require that anyone served with a pleading is a party (e.g., Rule 4), for what could be the purpose of serving a nonparty? There is no provision in the rules for serving a nonparty, but neither is there a provision that service automatically amends the complaint to add the recipient as a party. Rule 21 authorizes the district court to add or drop parties at any stage, and no motion was made in this case under that rule, nor order issued—but no order was necessary if the panel's chairman and the insurance commissioner became parties just by virtue of being served.

The sensible approach, it strikes us, is to regard the pleading's caption, service of

process, and perhaps other indications of intention to bring or not to bring a person into a lawsuit as evidence upon which the district court must decide, in cases of doubt, whether someone is a party. "The status of the parties, whether formal or otherwise, does not depend upon the names by which they are designated, but on their relation to the case, its effect on their interest, and whether judgment is sought against them." *Heatherton v. Playboy, Inc.*, 60 F.R.D. 372, 377 (C.D.Cal.1973); see *Greenwood v. Ross*, 778 F.2d 448, 452 (8th Cir.1985); *Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank*, 625 F.Supp. 713, 721 n. 5 (D.Minn.1986); 5 Wright & Miller, Federal Practice and Procedure § 1321, at pp. 458–59 (1969). This approach is consistent with the rule that requires federal suits to be maintained in the name of the real party in interest. See Fed.R.Civ.P. 17(a); 6 Wright & Miller, Federal Practice and Procedure § 1556, at pp. 713–16 (1971). In this case, it is fairly clear that Mrs. Jones's intention was not to name the panel chairman and the insurance commissioner as parties, but merely to comply with the Malpractice Act, which requires that they be served. This regresses the inquiry to *why* the Act imposes such a requirement. We conjecture that the purpose is merely to place the panel and the department on notice that a party to the underlying dispute is seeking a preliminary determination that would bind them. An analogy can be drawn to "serving" a district court with the notice of appeal (and of course the notice of appeal *is* filed in the district court, not the court of appeals) in order to apprise that court that jurisdiction over the case has been removed to a higher court. This is not called service, whereas the Malpractice Act requires that the insurance commissioner and the panel chairman be "served," but we do not think that this nomenclature made them parties. (If it had done so, the district court undoubtedly would have dropped them, using its broad authority under Rule 21.) Functionally they were not parties, any more than a district judge is a party to an appeal from his judgment, or to an order remanding the case to him with directions (equivalent to the instructions issued by the district court in this case).

If the two Malpractice Act functionaries *were* parties, they were nominal parties, whose presence does not affect jurisdiction. See, e.g., *Wormley v. Wormley*, 21 U.S. (8 Wheat.) 421, 451, 5 L.Ed. 651 (1823); *Wood v. Davis*, 59 U.S. (18 How.) 467, 15 L.Ed. 460 (1856); *Navaro Savings Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980); *Matchett v. Wold*, 818 F.2d 574, 576 (7th Cir.1987). The disputants are Jones and Griffith. The chairman of the Medical Advisory Panel is not a disputant but an arbitrator (less, really—the nonvoting chairman of an arbitral panel whose judgment is nonbinding). The insurance department is an insurer for so much of Jones's claim as exceeds $100,000. A defendant's liability insurer is not normally a party to a tort suit against the insured. Certainly neither the chairman nor the commissioner was an indispensable party, who would have to be made a party whether or not the plaintiff wanted them to be parties. See Fed.R.Civ.P. 19(b).

So there is complete diversity. But we find another ground for doubting that the district court had subject-matter jurisdiction, and although neither party has mentioned this ground we must consider it. Article III of the Constitution confines the jurisdiction of the federal courts to cases or controversies (these are, for all intents and purposes, synonyms, see 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3529, at pp. 280–81 (2d ed.1984)). Federal courts are not authorized to render advice to persons contemplating litigation or acts that may lead to litigation. They cannot for example advise Congress on the constitutionality of proposed legislation. See, e.g., *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 476 (1961); *Illinois ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 941–42 (7th Cir.1983). A dispute must have ripened into a legal case before a federal court can act; the case must not lie merely in the future. But that is where the case of

*Jones v. Griffith* lies. In an effort to curtail unwarranted malpractice litigation Indiana has required the malpractice claimant to submit his claim to a panel of physicians *before* filing suit. The hope is that the panel's opinion, which is admissible although not conclusive in any suit that is filed, will induce a settlement of the dispute without the need for a lawsuit. See *Johnson v. St. Vincent Hospital, Inc., supra,* 273 Ind. at 388–89, 404 N.E.2d at 594–95. To facilitate the settlement process, the courts of Indiana are authorized to advise the panel with regard to the legal issues pertinent to its selection of an opinion to render from among the statutory options. These judicial advisory opinions are indeed advisory opinions. It is true that the panel is not free to disregard them, see Ind.Code § 16–9.5–10–5, any more than a lower court is free to disregard an advisory opinion issued by a higher court in a system that permits courts to issue such opinions. The preliminary determinations contemplated by the Malpractice Act are advisory opinions because they are rendered before suit and in the hope of heading off suit. Indiana courts can be and in this instance are authorized to render advisory opinions. Article III withholds this power from federal courts.

Mrs. Jones did not ask the federal district court for damages or any other relief against Dr. Griffith, or for that matter against anyone else. She asked the court to give legal instructions to an advisory panel mulling over a dispute that may never be the subject of a lawsuit. For if the panel concludes that there was no malpractice or that if there was it was not a causal factor in her husband's death, Mrs. Jones may be discouraged from suing (since the panel's opinion will be admissible in her suit), while if the panel finds that there was malpractice and it was a cause of her husband's death Dr. Griffith, his insurer, and the insurance department may be eager to settle on terms favorable to her. The panel's opinion will foster settlement by reducing uncertainty—settlement in advance of litigation. This as we said is one of the purposes of submission to the review panel.

How often it is achieved we do not know. Perhaps rarely. Cf. Sloan, *State Responses to the Malpractice Insurance "Crisis" of the 1970s: An Empirical Assessment,* 9 J. Health Politics, Policy & Law 629, 636 (1985). Neither party has informed us, and we are not readily able to discover, how often suits are filed notwithstanding the rendition of an opinion by a Medical Review Panel after instruction by a court. One possible straw in the wind, however, is a recent report by the department of insurance showing that more than one-quarter of the claims filed under the Act are closed before the panel even renders its opinion. *Indiana Patient's Compensation Fund as of December 31, 1988,* at 3 (Ind. Dept. of Ins., Medical Malpractice Division 1989). In addition, statistics on the operation of the Indiana Malpractice Act reveal extraordinary delays by the medical review panels. See *Cha v. Warnick,* 476 N.E.2d 109, 110 (Ind.1985); see generally Kemper, Selby & Simmons, *Reform Revisited: A Review of the Indiana Medical Malpractice Act Ten Years Later,* 19 Ind.L.Rev. 1129 (1986). This is hardly a point in favor of the Act, but since delay increases the chances of settlement (by reducing the present value of the stakes), it provides further reason to doubt the inevitability of a lawsuit. The burden was on Mrs. Jones to establish that, despite appearances, the preliminary instruction is not really an advisory opinion but an interim ruling in a lawsuit sure to be instituted. It would certainly be contrary to the spirit of the Malpractice Act, as well as the principles of federal jurisdiction, to allow Mrs. Jones to obtain a preliminary determination from a federal district court by promising that, come what may, she will sue as soon as the Medical Review Panel renders its opinion. Cf. *Mann v. Hendrian,* 871 F.2d 51, 53 (7th Cir.1989); *Crowley Cutlery Co. v. United States,* 849 F.2d 273, 276 (7th Cir.1988).

By no means does our decision preclude Mrs. Jones from maintaining a malpractice suit against Dr. Griffith in federal court under the diversity jurisdiction. When she obtains instructions from an Indiana court

to the Medical Review Panel and the panel issues its opinion, she will be free to file a malpractice suit, and to do so in federal district court since there is complete diversity. But until she can file suit there can be no federal jurisdiction. The proceeding before the panel, together with any ancillary proceeding in an Indiana state court to instruct the panel, is under Indiana law a condition precedent to the maintenance of a lawsuit. She does not question either that a state has the power to set a condition precedent to maintaining a suit under state law in either state or federal court or that the condition precedent in the Indiana Malpractice Act—obtaining the views of the Medical Advisory Panel—is fully applicable to federal diversity cases. Both issues were resolved against her in *Hines v. Elkhart General Hospital*, 603 F.2d 646 (7th Cir.1979), and she does not ask us to reconsider that decision. Although the long delays that the Act can impose on diversity litigants may create a suspicion that Indiana is trying to thwart access to the courts, the state is not discriminating against the federal litigant, since the identical barrier applies to suits in state court. This is not a case like *Home Ins. Co. v. Morse*, 87 U.S. (20 Wall.) 445, 22 L.Ed. 365 (1874), which invalidated a state statute forbidding out-of-state corporations to transact business in the state unless they waived their right to remove suits against them to federal court. At all events, any challenge to the Indiana Malpractice Act on that ground has been waived—indeed, the plaintiff does not challenge the Act at all but merely wants the preliminary determination that the Act authorizes to be made by a federal court rather than a state one.

It would be obvious that the judicial proceeding ancillary to the required arbitral proceeding cannot be maintained in federal court if instead of authorizing a motion for a preliminary determination the Act had authorized Mrs. Jones to visit Judge Lee for informal advice on the merits of her claim. But if she is right, that in effect is what the Act *has* authorized. Nor should labels determine outcomes. The rule against federal courts' issuing advisory opinions is part of a broader policy against unnecessary recourse to federal courts. Federal courts exist to resolve cases rather than to help people prevent their disputes from turning into cases. Whether we call the preliminary determination an advisory opinion, or note that the dispute between Jones and Griffith has not yet ripened into an actual case, the result—dismissal of Mrs. Jones's motion for a preliminary determination—must be the same.

An analogy can be drawn to a case in which exhaustion of administrative remedies is required before a suit can be brought. Exhaustion includes any judicial review of the administrative decision. See *City of Peoria v. General Electric Cablevision Corp.*, 690 F.2d 116, 122 (7th Cir. 1982); cf. *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Until the administrative proceeding together with any judicial review thereof is complete, the dispute is not ripe for litigation. The "preliminary determination" procedure authorized by the Indiana Medical Malpractice Act provides for a kind of advance review of the Medical Review Panel's opinion. It is a step in a form of administrative exhaustion that Indiana requires before litigation may be commenced. We think the present case fits the advisory-opinion rubric more snugly than the prematurity rubric only because the Medical Review Panel's opinion is advisory in character. The preliminary determination made by the court is advice to the advisors; the fact that it binds them is immaterial. But, to repeat, the label is not important; the principle that federal courts will not assume jurisdiction before there is a case is.

Since Jones and Griffith desire different instructions to the Medical Review Panel, our denial that there is a case or controversy between them may seem hypertechnical. Certainly they care enough to incur legal fees in an effort to influence the instructions, and through them the panel, and through it the terms of any settlement or the course of any trial. But people pay legal fees for advice and for all sorts of precomplaint investigation and jockeying. Willingness to pay does not make a dispute justiciable. *Alliance to End Repression v.*

*City of Chicago*, 820 F.2d 873, 876 (7th Cir.1987). There is certainly a dispute between Jones and Griffith and it is one with substantial stakes, both financial and emotional. But Indiana has forbidden the commencement of a malpractice suit before the Medical Review Panel has rendered its opinion, and Jones—who was careful to file a proposed, not an actual, complaint in the federal district court—does not question the propriety of this prohibition. Her recourse to federal court was premature.

To vary a previous hypothetical, suppose the Indiana Medical Malpractice Act authorized a physician against whom a malpractice complaint was lodged with the insurance department to request a judge to advise him whether the complaint was well founded in law. Clearly a federal judge would not be authorized to exercise this power. The present case is more difficult because the preliminary skirmishing in the battle between Mrs. Jones and Dr. Griffith was more advanced. But the principle is the same. The dispute is still in an early stage. The review panel has not yet rendered its opinion. We are well short of the commencement of the actual suit. Before a suit is filed a federal district court has no jurisdiction—though, like almost all legal generalizations, this one is suspect: a federal court could issue a writ under 28 U.S.C. § 1651(a) to preserve potential jurisdiction. *FTC v. Dean Foods Co.*, 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). But this is not such a case.

The judgment of the district court is vacated with instructions to dismiss the case for want of subject-matter jurisdiction. We add that dismissal will not result in Mrs. Jones's being barred by the statute of limitations from pursuing her malpractice claim after the Medical Review Panel renders its opinion. The statute is tolled until the ninety-first day following the claimant's receipt of the panel's opinion, Ind. Code § 16–9.5–9–1(b), and as we noted earlier the proceedings before the panel are automatically stayed pending the judicial proceeding for a preliminary determination.

VACATED AND REMANDED WITH INSTRUCTIONS.