Jerome R. LEWIS, Plaintiff,

v.

TIME INCORPORATED, a corporation, Mid-Cal Periodical Distribution, and DOES I through XV, inclusive, Defendants.

Civ. No. S–79–369.

United States District Court, E. D. California.

Sept. 14, 1979.

Bolling, Pothoven, Walter & Gawthrop by T. D. Bolling, Jr., Sacramento, Cal., for plaintiff.

John V. Diepenbrock, James T. Freeman, Charity Kenyon, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendants.

## OPINION AND ORDER

KARLTON, District Judge.

In the 1930's the poet Carl Sandburg asked:

Why is there always a secret singing
When the lawyer cashes in?
Why does the hearse horse snicker
Hauling a lawyer away?

In its April 10, 1978, edition Time Magazine's answer was contained in a story entitled "Those #*X§!! Lawyers."

In casting about for reasons for the generally unfavorable view Time found the public held of lawyers, it suggested that one reason may be found in the profession's system of self-discipline.

To illustrate its point Time reported:

"Thanks to painfully slow bar discipline, a northern California lawyer named Jerome Lewis is still practicing law despite a $100,000 malpractice judgment against him in 1970 and a $60,000 judgment including punitive damages in 1974 for defrauding clients of money." [1]

Lewis brought an action in the state court seeking damages for libel, slander, invasion of privacy, and intentional infliction of emotional distress. His complaint named Time, Inc., Mid-Cal Periodical Distribution, and DOES I–XV as defendants.

Mid-Cal, as it turned out, is part of a larger, nonresident corporation. When plaintiff learned that the action against Mid-Cal would not destroy diversity jurisdiction, he chose to voluntarily dismiss that defendant. On April 12, 1979, plaintiff served Lucky Stores, Inc., a California corporation, as a John Doe distributor defendant.

Defendant Time, asserting diversity jurisdiction, removed the action to this court on May 30, 1979. Plaintiff moves to remand on the basis that the joinder of Lucky Stores defeats diversity jurisdiction. Time acknowledges that the joinder of Lucky Stores, Inc. as a defendant appears to defeat this court's jurisdiction because of a lack of complete diversity since plaintiff is a

---

1. "Painful slowness" is, of course, a relative term. I note in passing that plaintiff's lawsuit was filed in the California Superior Court in March, 1979. Undoubtedly Time views the proceedings in the present suit as due deliberation. As Martin Luther taught, "It makes a difference whose ox is gored."

California resident,[2] and also because of the requirement of 28 U.S.C. § 1441(b) that no defendant be a resident of the forum state. Nevertheless, defendant resists remand arguing that the claim against Time, a nonresident corporation, is separate and independent from the claims against the resident distributor defendants, and that in any event the joinder of the distributor defendants is fraudulent and must therefore be disregarded.

I have concluded that the claim against Time, Inc. is not separate and independent from the other claims. Nonetheless, because of the serious First Amendment interests involved, and the presence of indicia of fraudulent joinder, I have decided to retain jurisdiction for the present. Accordingly, I will deny the motion for remand without prejudice to a renewed motion.

## I

### REMOVAL IN GENERAL

Any consideration of a motion to remand must commence with a recognition of the limited nature of removal jurisdiction, and that the scope of the removal statute must be strictly construed. *Glucksman v. Columbia Broadcasting System, Inc.* (S.D.Cal. 1963) 219 F.Supp. 767, 768; 14 Wright & Miller, *Federal Practice & Procedure* § 3721, pp. 535–537. This rule exists not only because federal courts, being courts of limited jurisdiction, must confine themselves to the jurisdiction granted by Congress, *Victory Carriers Inc. v. Law* (1971) 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, but also because of a plaintiff's traditional right to select the forum and "to prosecute his own suit in his own way to a final determination." *Parks v. New York Times Company* (5th Cir. 1962) 308 F.2d 474, 478.

■ Removal, of course, is only valid if the federal court would have had jurisdiction had the claim originally been brought before it. 28 U.S.C. § 1441(a). Defendant's

claimed jurisdictional basis is diversity and thus if any proper defendant is a California resident, remand is required.

## II

### SEPARATE AND INDEPENDENT CLAIMS

28 U.S.C.A. § 1441(c) provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

The definitive construction of § 1441(c) is *American Fire and Casualty Co. v. Finn* (1951) 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702. There the Supreme Court observed that Section 1441(c), adopted in 1948, replaced the confusing "separable controversy" standard for removal and thus, "A separable controversy is no longer an adequate ground for removal unless it also constitutes a separate and independent claim or cause of action." Id. at 11, 71 S.Ct. at 538–539.

■ The purpose of Section 1441(c) is to *limit* removal. Id. at 10. "The addition of the word 'independent' gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts . . ." Id. at 12, 71 S.Ct. at 539.

The crucial determination under 1441(c) is whether a truly separate and independent cause of action is stated. The facts and result in *Finn* are illustrative. Plaintiff sustained a fire loss. He sued two different insurance companies and their local (and nondiverse) agent for payment. In ordering remand, the court stated its broad test:

---

2. Plaintiff's claims against the resident fictitiously named distributor defendants also appear to destroy complete diversity (*Preaseau v. Prudential Ins. Co.* (9th Cir. 1979) 591 F.2d 74,

78). But, cf. *Fifty Associates v. Prudential Ins. Co. of America* (9th Cir. 1970) 446 F.2d 1187; *Molnar v. NBC* (9th Cir. 1956) 231 F.2d 684.

"[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an *interlocked series of transactions,* there is no separate and independent claim or cause of action under 1441(c)." Id. at 14, 71 S.Ct. at 540. (Emphasis added.) Thus, in *Finn,* the failure to pay compensation was a single wrong and remand was proper.[3]

Following *Finn* this circuit has noted that a "single wrong cannot be parlayed into separate and independent causes of action by multiplying the legal theories upon which relief is sought or by multiplying defendants against whom a remedy is sought for the same injury." *Clarence E. Morris, Inc. v. Vitek* (9th Cir. 1969) 412 F.2d 1174, 1176; *Sessions v. Chrysler Corp.* (9th Cir. 1975) 517 F.2d 759, 761.

Since modern state joinder practice usually requires either common questions of law or fact or a transactional nexus, the *Finn* holding generally negates Section 1441(c) jurisdiction. See e. g. Wright & Miller, *supra* § 3724, p. 629.

■ It is against this background that defendant's contentions must be examined. Essentially, defendant argues that plaintiff has stated separate and independent claims against Time because Time's conduct constituted a separate publication of the alleged libel distinct from the conduct of the nondiverse defendant distributors. Time cites New York and California cases for the proposition that each distinct publication of a libel gives rise to a separate cause of action.

Defendant's case law is suspect—it consists of either state definitions of a libel cause of action that are not necessarily relevant to a *Finn* determination, or pre-*Finn* federal cases under the older "separable controversy" standard for removal. Whatever the merits of defendant's contention that for removal purposes separate publications are equivalent to separate causes of action—a doubtful contention in any case given *Finn* and subsequent case law—plain-

tiff has in fact not alleged separate publication or causes of action against the various defendants.

Rather than pleading separate publications, plaintiff chose to allege a single publication:

"On April 10, 1978 . . . *defendants* printed, published, circulated, and distributed, or caused to be printed, published, circulated, and distributed . . an article. . . ." (¶ VIII of First Cause of Action) (Emphasis added.)

Stated in this way, only a single event—the April 10 publication—is alleged. Only a single wrong—the wrongful invasion of plaintiff's interest in reputation—for which there can be but one recovery, is alleged.

The fact that plaintiff *could* have alleged multiple publications or several causes of action is irrelevant. "Removability is dependent upon the course of pleading actually used by the pleader and not by what he could have asserted had he so chosen." *Greenshields v. Warren Petroleum Corp.* (10th Cir. 1957) 248 F.2d 61, 65, cert. den. 355 U.S. 907, 78 S.Ct. 334, 2 L.Ed.2d 262.

Nearly the same issue was faced in *Toanone v. Williams* (E.D.Pa.1975) 405 F.Supp. 36. Plaintiff there sued both the original libeler and the broadcaster. Rather than alleging separate publications, plaintiff alleged only a single publication by both parties. The court, noting that removability was dependent upon the course of pleadings actually employed by plaintiff, found that only a single injury was pled and thus remanded. Accord, *Meade v. Weddington* (E.D.Ky.1956) 145 F.Supp. 183, 184–185.

■ Under plaintiff's pleadings he can recover only once for the alleged damage to his reputation. As in *Finn,* a single "interlocked series of transactions" leading to a single wrongful event—the publication of the libel—is the basis for plaintiff's claim. Accordingly, for removal purposes the claim against Time, Inc. is not separate and inde-

---

**3.** The court in *Finn,* supra at 12–13, cited with approval *Baltimore S. S. Co. v. Phillips* (1927) 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069, which held that in a negligence action there is only one cause of action whether the injury is due to one or several negligent acts. Id. at 321, 47 S.Ct. 600.

■■■■■■■

pendent from the claim against the nondiverse defendants.

## III

### FRAUDULENT JOINDER

Defendant also argues that removal is proper because complete diversity exists but for the fraudulent joinder of Lucky Stores, Inc. (and, presumably, the fictitious named resident distributors). Essentially, defendant argues that no cause of action is stated against the distributors because (1) since they had no editorial control over the article they neither published nor republished the libel, and (2) no facts are alleged demonstrating knowledge of falsity or giving rise to a duty to investigate the allegedly libelous character of the article.

In response, plaintiff urges strict adherence to the cases that require remand if there is any possibility that a cause of action has been stated and argues that at the very least there is doubt as to whether or not he has stated a cause of action. Finally, plaintiff suggests that if his broad allegations are insufficient to state a cause of action against the distributors, amendment be permitted, to be swiftly followed by remand.

### A. Standard To Be Applied

■■■ The joinder of a nondiverse defendant, although fair on its face, may be shown by a petition for removal to be only a fraudulent device to prevent removal. Under such circumstances, the court may disregard the joinder and retain jurisdiction. *Wilson v. Republic Iron and Steel Company* (1921) 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144. "Fraudulent joinder" is a term of art, it does not reflect on the integrity of plaintiff or counsel (*Newman v. Forward Lands, Inc.* (E.D.Pa.1976) 418 F.Supp. 134, 136, n.1) but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or *in fact* no cause of action exists. *Dodd v. Fawcett Publications, Inc.* (10th Cir. 1964) 329 F.2d 82, 85; *Parks v. New York Times Company* (5th Cir. 1962) 308

F.2d 474, 478; cf. *Sessions v. Chrysler Corp., supra.* In other words, a joinder is fraudulent if "there [is] no real intention to get a joint judgment, and . . . there [is] no colorable ground for so claiming." *Parks v. New York Times, supra,* at 478.

■■ While normally in a removal action the District Court must take the plaintiff's pleadings as it finds them, a different approach is utilized when a colorable claim of fraudulent joinder is raised.

"While issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, Rock Island & Pacific Railroad Co.* (10th Cir. 1967) 378 F.2d 879, 881–882.

The court may "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Publications, Inc., supra* at 85; *Wiley v. Safeway Stores, Inc.* (N.D.Okl. 1975) 400 F.Supp. 653, 655; *Lyon Ford, Inc. v. Ford Marketing Corp.* (E.D.N.Y.1971) 337 F.Supp. 691, 694; *Williams v. Atlantic Coast Line Railroad Co.* (S.D.Ga.1968) 294 F.Supp. 815, 816.

■■■ Of course, as in any removal action, doubt arising from merely inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand. See, e. g. *Greenshields v. Warren Petroleum Corp., supra* at 65. Additionally, ordinarily a fraudulent joinder claim must be capable of summary determination. *Sessions v. Chrysler Corp., supra; Dodd v. Fawcett Publications, Inc., supra.*

Some courts, however, are even more restrictive in their examination of a fraudulent joinder claim. These courts hold that if there is *any* doubt whatsoever regarding the sufficiency or good faith of the plaintiff's allegations, the case must be remanded. See, e. g. *Newman v. Forward Lands, Inc., supra* 136; *Harris Diamond Co. v.*

*Army Times Pub. Co.* (S.D.N.Y.1968) 280 F.Supp. 273, 276. The Ninth Circuit has not so held,[4] and I have serious doubt as to the wisdom of such a mechanical rule.

Moreover, even if this were the general rule, there are certain cases in which, due to the peculiarly federal interests involved, or the particularly sensitive issues raised, it would be inappropriate to apply a rule resolving every doubt against retaining jurisdiction. In such a case, the correct resolution is not to remand the case at the first whisper of a doubt, but rather to retain jurisdiction, at least until such time as slight doubt ripens into something of substance.

The "any doubt" standard is particularly inappropriate in the present case where First Amendment interests are seriously implicated. "Our touchstones are that acceptable limitations must neither affect 'the impartial distribution of news' and ideas, [citations] nor because of their history or impact constitute a special burden on the press, [citation] nor deprive our free society of the stimulating benefit of varied ideas because their purveyors fear physical or economic retribution solely because of what they choose to think and publish." *Curtis Publishing Company v. Butts* (1967) 388 U.S. 130, 150–151, 87 S.Ct. 1975, 1989, 18 L.Ed.2d 1094.

The present case is not merely a private libel case. A respected nationwide magazine and local news and magazine distributors are being sued for publishing an article on the state of the legal profession—a matter of profound public importance. In a libel suit such as this, there is always the danger that the litigation itself will inhibit and chill free expression. See, e. g. *New York Times Company v. Sullivan* (1964) 376 U.S. 254, 277, 84 S.Ct. 710, 11 L.Ed.2d 686.[5]

Federal courts have long been especially sensitive when First Amendment rights are implicated. No rule of law, no matter how innocuous it appears, can claim "talismanic immunity from constitutional limitations. It must be measured by standards that satisfy the First Amendment." *New York Times Company v. Sullivan, supra* at 269, 84 S.Ct. at 720. Even well established procedural rules must bow to First Amendment considerations. See, e. g. *Marcus v. Search Warrants* (1961) 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127; *N. A. A. C. P. v. Alabama ex. rel. Patterson* (1958) 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488; *U. S. v. Various Articles of Obscene Merchandise* (2nd Cir. 1979) 600 F.2d 394, 400. In upholding the *denial* of a summary judgment motion, normally an unappealable order, the court in *Time, Inc. v. McLaney* (5th Cir. 1969) 406 F.2d 565, 566, explained:

"The subject matter of this litigation, involving, as it does, the very serious and timely question of how far the First Amendment guarantee of freedom of the press may still be impinged upon by actions for libel, places some cases in a somewhat different category. ¶ . . . because of the chilling effect of such litigation." *Id.* at 566.

These First Amendment considerations have special relevance in a removal situation when examined in light of the stated purposes of diversity and removal jurisdiction. The rationale for such jurisdiction is based upon the twin goals of avoiding local prejudice and guaranteeing the vindication of federal rights. See generally 13, 14 Wright & Miller, *Federal Practice & Procedure* §§ 3601, 3721. Success in achieving these goals is dependent upon the

---

4. Plaintiff cites *Heatherton v. Playboy, Inc.* (C.D.Cal.1973) 60 F.R.D. 372, as an analogous case where the strict rule requiring remand was applied. In that case, however, the court explicitly noted that "nobody is claiming . . . [the] complaint . . . is fraudulent." *Id.* at 376.

5. The time is long since past when cases such as this could be treated independent of First Amendment standards. From *New York*

*Times Co. v. Sullivan* through *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, and *Time, Inc. v. Firestone* (1976) 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154, our high Court has struggled to accommodate "the individual's interest in his reputation" *Herbert v. Lando* (1979) 441 U.S. 153, 169, 99 S.Ct. 1635, 1645, 60 L.Ed.2d 115, 129, to the commands of the First Amendment.

parties' ability to obtain "national justice" from an unbiased federal court. See, e. g. *Dodge v. Woolsey* (1856) 18 How. (59 U.S.) 331, 354, 15 L.Ed. 401; Hamilton, *The Federalist* (Wright ed. 1961) No. 80, p. 502.

These jurisdictional concerns are highlighted in a First Amendment case. The obligations imposed on the federal courts when a lawsuit trenches upon activity prima facie involving First Amendment protection, requires the application of different criteria, employing higher standards. *Old Dominion Br. No. 496, National Association of Letter Carriers, AFL–CIO v. Austin* (1974) 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745; *Ashton v. Kentucky* (1966) 384 U.S. 195 [16 L.Ed.2d 469, 86 S.Ct. 1407] and see cases collected at fn.2 thereof. Moreover, as a practical matter, not infrequently, defamation cases arise out of media criticism of the conduct of local officials (See, e. g. *New York Times Co. v. Sullivan, supra; Garrison v. Louisiana* (1964) 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125) or local heroes (*Curtis Publishing Co. v. Butts, supra*), and thus necessitate a forum free of parochial pressure or prejudice.

Adherence to a ritualistic "all doubts resolved in favor of remand" rule where a serious claim of fraudulent joinder is raised in an action implicating First Amendment values would undermine the special responsibility of the federal courts in such cases. This problem is especially acute in this circuit since we adhere to the so-called "voluntary-involuntary" rule which bars removal after a dismissal of a nondiverse defendant unless the dismissal was voluntarily made by plaintiff. *Self v. General Motors Corporation* (9th Cir. 1978) 588 F.2d 655. Accordingly, if after remand the state court concluded that the alleged fraudulent claim was in fact without merit under state law the case could not be removed again to the federal court. Thus deferral to the state courts for the resolution of *any* doubts con-

cerning the validity of a cause of action is equivalent to the permanent loss of federal jurisdiction. The result, of course, would then be that a plaintiff who pleads artfully enough could always avoid this court's jurisdiction. Limited though removal jurisdiction be, it certainly was not intended to be a nullity.

Our Supreme Court has required us to apply "sensitive tools" (*Speiser v. Randall* (1958) 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460) in resolving First Amendment questions. When First Amendment considerations infuse a diversity action, the "slight doubt" standard for remand is not a "sensitive tool"—not a scalpel, but a butcher's knife.[6]

 Having recognized that the First Amendment requires a more critical examination of the "fraudulent joinder" issue, the modest scope of the resolution of this issue that the court declares should not be misunderstood. The court is not faced with a choice between the extremes of automatic remand and definitive retention of jurisdiction. A third alternative exists which protects the plaintiff's interest in choosing a forum, the state's interest in deciding state law, and the defendant's interest in vindicating First Amendment rights. The proper course where a strong claim of fraudulent joinder is made in a case implicating First Amendment rights is for the court to retain jurisdiction for the present without prejudice to plaintiff's right to move for remand at any point in the litigation when it can be demonstrated that the cause of action which is assertedly without substance is in fact a viable claim. The court itself, of course, can remand at any time if it appears the case was improvidently removed. 28 U.S.C. § 1447(c).

**B. *Is The Joinder Of The Resident Distributors Fraudulent?***

The discussion above assumed that there is a substantial claim of fraudulent joinder.

---

**6.** No disrespect for the California Courts, or suspicion as to their dedication to free speech is intended by this holding. I only note that this court has a duty to do national justice and protect rights arising under the Federal Constitution. Moreover, rules of law and procedure cannot be tied to local, and perhaps transitory, conditions. In other places, and perhaps other times, local bias may be a more concrete danger, and the federal courts' dedication to national justice a more vital necessity.

I now turn to the question of whether that assumption is justified.

The initial consideration in determining whether the joinder is fraudulent is what standard of liability California law applies to distributors who disseminate libelous material. The goal of this inquiry is to determine whether there is "a reasonable basis for predicting that the state law might impose liability on the facts involved." *Bobby Jones Garden Apartments, Inc. v. Suleski* (5th Cir. 1968) 391 F.2d 172, 176–177.

The researcher of California libel law is struck by the paucity of cases holding distributors liable for the distribution of defamatory material. This court has discovered no California case imposing liability where a distributor merely sold an unchanged libelous periodical. An examination of analogous cases and state and federal First Amendment authority suggest that the paucity of cases is not happenstance. The standard of liability makes it highly improbable that a distributor could be found liable without offending the First Amendment.

■ While there are no California decisions directly on point,[7] the court is assisted by cases involving analogous situations and by dicta from California decisions. The "general rule for defamation is that everyone who takes a *responsible* part in the publication is liable for the defamation." *McGuire v. Brightman* (1978) 79 Cal.App.3d 776, 789, 145 Cal.Rptr. 256, 264. (Emphasis added.) Thus, a business manager of a newspaper is not liable where he had no direct participation or knowledge of the production of the libel. *Sakuma v. Zellerbach Paper Company* (1938) 25 Cal.App.2d 309, 321–322, 77 P.2d 313. Similarly, the author of an originally non-defamatory statement is not liable for changes, made without his knowledge, that convert the statement from innocent to actionable. *Montandon v. Cox Broadcasting Corporation* (1975) 45 Cal.App.3d 932, 936, 120 Cal. Rptr. 196.

■ The common thread in these cases is that there can be no liability absent scienter. The requirement of scienter comports with the traditional rule that a republisher cannot be held liable unless he had knowledge of the defamatory content (4 Witkin, *Summary of California Law*, § 316; 6 Cal. Jur.3d, *Assault And Other Willful Torts*, § 187), and satisfies the federal constitutional rule against liability without fault. See, e. g. *Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789; *Smith v. California* (1959) 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205.

The Restatement 2d Torts formulation appears to be an accurate statement of California law: [O]ne who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character." Rest. Torts 2d § 581. Comment "d" to § 581 explains:

"[A] news dealer is not liable for defamatory statements appearing in the newspapers or magazines that he sells if he neither knows nor has reason to know of the defamatory article. *The dealer is under no duty to examine the various publications that he offers for sale to ascertain whether they contain any defamatory items.* Unless there are special circumstances that should warn the dealer that a particular publication is defamatory, he is under no duty to ascertain its innocent or defamatory character. On the other hand, when a dealer offers for sale a particular paper or magazine that notoriously persists in printing scandalous items, the vendor may do so at the risk that any particular issue may contain defamatory language." (Emphasis added.) Rest. Torts 2d § 581.

■ State and federal cases involving distributors and the First Amendment indicate that no lesser standard could pass muster. Further, these cases suggest the heavy

---

**7.** Plaintiff cites *Heatherton v. Playboy, Inc.*, supra, where a sister district court in remanding a case suggested that a cause of action could be stated against a distributor. As noted above, that case involved no allegation of fraudulent joinder and thus there was no occasion for the issue of liability to be briefed, argued, or actually decided.

burden plaintiff must assume in order to impose liability.

The right to distribute newspapers and other periodicals lies "at the heart" of First Amendment guarantees. *Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 300, 138 Cal.Rptr. 53, 562 P.2d 1302; *California Newspaper Publishers Assn. v. City of Burbank* (1975) 51 Cal.App.3d 50, 53, 123 Cal.Rptr. 880. Under federal constitutional standards, the right to distribute is carefully protected. In striking down a statute that imposed criminal liability for possession of obscene books by a book store proprietor without the necessity of showing scienter, the Supreme Court explained that the inevitable result of such a law is that the bookseller "will tend to restrict the books he sells to those he has inspected . . [a]nd the bookseller's burden would become the public's burden, for by restricting him the public's access to reading matter would be restricted." *Smith v. California, supra,* 361 U.S. at 153, 80 S.Ct. at 218–219. It makes no difference that here we deal with civil liability, for "fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute." *New York Times v. Sullivan, supra,* 376 U.S. at 277, 84 S.Ct. at 724.

California's equivalent to the First Amendment (Cal.Const. art. I, § 2) is, if anything, even "more definitive and inclusive than the First Amendment . . .. In this state we have consistently viewed with great solicitude the right to uninhibited comment on public issues. [citation]" *Wilson v. Superior Court* (1975) 13 Cal.3d 652, 658, 119 Cal.Rptr. 468, 472, 532 P.2d 116, 120.[8]

The court thus finds that under California law, at the very least, plaintiff must prove that the distributors either knew of the libelous content of the article or that facts were known which imposed a duty to investigate.

In the present case, plaintiff broadly alleges that *all* defendants in the exercise of reasonable care would have realized or could have discovered the libel, that all defendants published the article knowing it was false or with reckless regard for the truth, and that all were negligent in disseminating the article without reasonable investigation. No specific facts are alleged to show that the distributor defendants either had knowledge of the defamatory nature of the article or had a duty to investigate. Such knowledge cannot be presumed, indeed there is probably a presumption of ignorance. See, e. g. *Howser v. Pearson* (D.D.C.1951) 95 F.Supp. 936.

Such broad averments are suspect on both First Amendment and fraudulent joinder grounds. Given the First Amendment's rigorous standards, necessitated by fear that free expression otherwise would be chilled (see *Dombrowski v. Pfister* (1965) 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22), it is unlikely that such conclusionary pleading could withstand demurrer. Pleading rules, too, must be read with a First Amendment gloss. In First Amendment cases, the state court is required to apply "substantive and *procedural* criteria far more exacting" than normal cases. *Castro v. Superior Court* (1975) 9 Cal.App.3d 675, 691, 88 Cal.Rptr. 500, 512. (Emphasis added.) The necessity for more detailed pleading in such a libel case is inferentially recognized in California's requirement that the libel itself be pled in detail. See Witkin, *California Procedure* § 599, p. 2238.[9]

---

8. Whether this formulation suggests that California follows the plurality opinion in *Rosenbloom v. Metromedia, Inc.* (1971) 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296, rather than the public figure standard of *Time, Inc. v. Firestone,* supra, need not be resolved at this time. Cf. *Montandon v. Triangle Publications, Inc.* (1975) 45 Cal.App.3d 938, 948, 120 Cal.Rptr. 186, cert. den. 423 U.S. 893, 96 S.Ct. 193, 46 L.Ed.2d 126; *Belli v. Curtis Publishing Co.*

(1972) 25 Cal.App.3d 384, 388, 102 Cal.Rptr. 122.

9. Indeed, one California Court of Appeal has required allegations of specific facts which indicate the existence of constitutional malice (Cf. *New York Times v. Sullivan,* supra). "The rule . . . serves a salutory purpose: it makes it impossible for a plaintiff . . . to force the case to issue by the naked allegation that defendant acted 'maliciously.'" *Noonan*

A requirement of specific allegations of facts demonstrating either actual knowledge or facts giving rise to a duty to investigate is especially important in a case seeking to impose liability on a distributor. The distributor sued for libel is not directly responsible in any reasonable sense for the libel. A distributor normally has no direct involvement in the preparation or production of an allegedly libelous article. Moreover, the distributor, lacking any control or responsibility for the content, and without editorial or reporter staff, is less able than the publisher to investigate or consider the potentially defamatory nature of his wares. Accordingly, the danger in self-censorship is more threatening than it is with the original publisher, since without such resources or control the distributor has all the more reason to be cautious. Finally, since the distributor normally carries a multitude of magazines and newspapers, self-censorship carries potentially more pervasive consequences.

The "failure to dismiss a libel suit," the *McLaney* court noted regarding publisher liability, "might necessitate long and expensive trial proceedings, which, if not really warranted, would themselves offend [First Amendment] principles . . . because of the chilling effect of such litigation." *Time, Inc. v. McLaney, supra* at 566. Because of the special role the distributor plays, it is, if anything, even more critical to dispose of meritless cases at the outset. The requirement of specific allegations of facts concerning actual knowledge or facts giving rise to a duty to investigate protects

the distributor from meritless cases at the outset. If a distributor can ever bear the burden of liability for libel, such detailed allegations must be required in order to insure the unrestricted distribution of newspapers and magazines which is at the heart of the First Amendment. Thus, I conclude that under California law specific factual allegations concerning actual knowledge or giving rise to a duty to investigate are required in any lawsuit seeking to impose liability on a distributor for libelous material in a periodical over which he has no editorial control.[10]

These same considerations lead me to conclude that a prima facie showing of fraudulent joinder has been made. Even if the pleadings in this case minimally satisfied state libel pleading requirements, however, my conclusion would be the same. As noted above, a joinder is also fraudulent although a cause of action is stated if in fact no cause of action exists, or there is no intention to secure a joint judgment.

The high standards required by the First Amendment combined with the total absence of case law in California holding a distributor liable where he has merely disseminated an unchanged article suggest the inherent improbability of proving such liability. In the present case no facts have been alleged, and no facts offered to this court (See *Dodd v. Fawcett Publications, Inc., supra*) that raise a possibility of any other conclusion.

---

*v. Rousselot* (1966) 239 Cal.App.2d 447, 453, 48 Cal.Rptr. 817, 821, but cf. *Mullins v. Brando* (1970) 13 Cal.App.3d 409, 421–422, 91 Cal.Rptr. 796, cert. den. 403 U.S. 923, 91 S.Ct. 2231, 29 L.Ed.2d 701. As to the latter case three observations are appropriate (1) it did not involve distributor liability, (2) it has not since been cited for its pleading proposition by any California case, and (3) in light of the stringent First Amendment standards recognized by the California courts, the case appears to be an aberration.

**10.** A superficially similar issue was decided in a removal context in *Albi v. Street & Smith Publications* (9th Cir. 1944) 140 F.2d 310. The Court, in rejecting a claim of fraudulent join-

der, held that plaintiff was not required to affirmatively allege the distributor's actual knowledge of the alleged libel because lack of knowledge was a defense. The Court's decision turned on the law of libel of the State of Washington, and was made long before the modern constitutional defamation standards were established by *New York Times Co. v. Sullivan,* supra, and its progeny. Finally, it should be noted that plaintiff's allegations in that case arguably did raise knowledge or a duty to investigate. Plaintiff alleged that the distributor placed placards around the city specifically calling attention to the allegedly libelous article, and its agent was warned about the article's potentially libelous character.

Further, the conduct of plaintiff raises serious doubts as to his intent to seek a judgment against Lucky Stores. Originally, plaintiff named Mid-Cal Periodical Distribution as a defendant. According to the affidavit filed by plaintiff in support of his motion to remand, Mid-Cal was never served. As defendant's removal petition makes clear, Mid-Cal is part of a larger, nonresident corporation. It was only shortly before removal that Lucky Stores was served. Lucky, of course, is a California corporation. Plaintiff subsequently voluntarily dismissed Mid-Cal from the action, and plaintiff has alleged nothing indicating that Lucky is more culpable than Mid-Cal. The only apparent distinction between the two distributors is the fact of residence. At oral argument on the motion to remand, plaintiff's counsel admitted that the only fact discovered between the time of the joinder of Lucky Stores, Inc. and the dismissal of Mid-Cal Periodical Distribution was the fact that Mid-Cal was not a California resident.

Independently these factors seriously undercut any claim that the joinder was bona fide; in combination, fraudulent joinder is a near certainty. Under these circumstances, and given the closer examination the First Amendment compels, remand at this time would be improvident. Defendant has not moved to dismiss the claim against the distributor defendants. Therefore, although I am presently disregarding Lucky for removal purposes, if plaintiff can demonstrate at any time prior to trial that a bona fide claim has been stated against Lucky, or that facts exist which raise a real possibility of liability, I will then entertain a motion to remand.

IT IS THEREFORE ORDERED that plaintiff's motion to remand is denied.