**Gerry L. SPENCE and the Spence Foundation for People's Attorneys, Inc., Plaintiffs,**

v.

**Larry FLYNT, Althea Flynt, L.F.P., Inc., a California Corporation, Larry Flynt Publications, Hustler Magazine, Inc., a California Corporation, Flynt Distributing Company, a California Corporation, Flynt Subscription Company, a Nevada Corporation, LFZ, Ltd., a B.W.I. Corporation, Island Distributing, Inc., a B.W.I. Corporation, David Kahn, Jim Goode, Doug Oliver, N. Morgen Hagen, Lonn M. Friend, Inland Empire Periodicals, an Oregon Corporation, and Park Place Market, Inc., a Wyoming Corporation, Defendants.**

No. C86–0169–B.

United States District Court, D. Wyoming.

Nov. 3, 1986.

Elizabeth Greenwood, Spence, Moriarity & Schuster, Jackson, Wyo., for plaintiffs.

George E. Powers, Jr., Godfrey & Sundahl, Cheyenne, Wyo., David O. Carson, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

BRIMMER, Chief Judge.

This matter came before the Court on the plaintiffs' Motion to Remand. The Court, having reviewed the pleadings and the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

The plaintiffs originally filed this suit in Wyoming State Court, sitting in Teton County, Wyoming, alleging libel, outrage, intentional infliction of emotional distress, invasion of privacy and a violation of the Racketeer Influenced and Corrupt Orga-

nization Act, (RICO) 18 U.S.C. § 1961, et seq., as a result of the defendants' involvement with the creation, publication and dissemination of an article in the July, 1985 issue of *Hustler* magazine. The case was removed immediately to federal court, based on allegations of federal question and diversity jurisdiction. The plaintiffs contend that the case was improperly removed, and now ask the Court to remand the case to State court.

The facts of this case, as set out in the plaintiffs' complaint and the affidavits and exhibits submitted by both sides are as follows:

In May of 1985, the defendants published and distributed the July, 1985 issue of *Hustler* magazine. That issue contained an article primarily devoted to comments about the plaintiff, Gerry Spence, with special focus on his participation as counsel for Andrea Dworkin in her lawsuit against *Hustler* and many of these same defendants, including Park Place Market. Copies of this issue were sold by defendant Park Place Market in Mr. Spence's home town of Jackson, Wyoming. Mr. Spence subsequently filed this lawsuit on May 12, 1986.

■ It is well-settled that on a motion to remand, the Court must consider the pleadings as they stand at the time of the filing of the petition for removal. *Pullman Co., et al v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1938); *Brown v. Eastern State Corporation et al.*, 181 F.2d 26 (4th Cir.1950); *In re Ben Carter*, 618 F.2d 1093 (5th Cir.1980); 14A Wright, Miller & Cooper, *Federal Practice and Procedure* §§ 3722, 3739 (1985). The Court is cognizant of the fact that the plaintiffs amended their complaint shortly after the case had been removed to this Court, thereby excising their RICO claim, the only federal question in the complaint. However, although this case no longer presents a federal question, for purposes of remand, the Court must look to the content of the complaint at the time of the petition for removal which did contain a federal question in the form of an allegation of violation of the RICO statute.

A court may remand a case "if at any time before final judgment it appears that the case was removed improvidently and without jurisdiction." 28 U.S.C. § 1447(c). Applying this standard to the asserted grounds for removal, namely, federal question jurisdiction due to the RICO claim and diversity jurisdiction due to fraudulent joinder of Wyoming defendant, the questions for remand are: 1) Did this Court have jurisdiction over the RICO claim, and 2) Was the Wyoming defendant, Park Place Market, fraudulently joined. If either one of these may be answered affirmatively, then removal was proper. However, as explained below, the Court answers both of these questions in the negative, finds that removal was improper and remands this case to Wyoming state court.

*Federal Question Jurisdiction*

■ If this Court has federal question jurisdiction over this case, it does by virtue of the plaintiffs' original allegation that the defendants violated the RICO statute. However, the Court notes that since this case was originally filed in state court, this Court cannot acquire jurisdiction over the subject matter of the suit unless the state court properly had jurisdiction over the subject matter. The Supreme Court established this principle of "derivative jurisdiction" in 1922 when it ruled:

> As the state court was without jurisdiction over either the subject-matter of the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense a derivative jurisdiction. *If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.* *Lambert Co. v. Balt. & Ohio R.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922) (emphasis added).

See also, *Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S.Ct. 1657, 1664–65, 68 L.Ed.2d 58 (1981); *Essington Metal Works*

*v. Retirement Plans of America, Inc.,* 609 F.Supp. 1546 (E.D.Pa.1985).

■ Whether the Wyoming state court had jurisdiction over the RICO claim is a matter of first impression for this Court. Neither the Supreme Court nor the Tenth Circuit have ruled on whether RICO is subject to exclusive federal jurisdiction or concurrent state and federal jurisdiction, and the courts that have addressed the issue are in disagreement.[1] Having reviewed the arguments for both sides, this Court must agree with those courts which found that the federal courts have exclusive jurisdiction over RICO claims.[2]

■ While the Court is cognizant of the presumption in favor of concurrent jurisdiction when the applicable statute fails to specify exclusive federal jurisdiction, *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), it agrees with the Washington court which reasoned that the statutory scheme of RICO reveals indicia sufficient to mandate exclusive federal jurisdiction. The Court correctly concluded that it is not

appropriate to dissect a statutory scheme, select one narrow provision thereof, and determine that with respect to that one provision at least, congressional silence is the equivalent of an affirmative grant of jurisdiction to the states which creates substantive and remedial rights unknown in the common law. Rather, where overall congressional intent is patently obvious; *viz.,* to halt expansion of organized racketeering activities, it would seem more desirable, if not jurisprudentially required, to read all RICO provisions *in pari materia,* and to conclude that Congress could not have

intended the untoward result of creating a wholly new cause of action triable in state courts across the country, while at the same time mandating that federal substantive law governs such actions, and at the same time reserving exclusively to the federal government the procedural power necessary to implement the underlying objective. *Kinsey v. Nestor Exploration, Ltd., supra,* 604 F.Supp. at 1371.

This Court is also in agreement with the Oklahoma court's finding that the particular section of RICO, 18 U.S.C. § 1964(c) was patterned after Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, which, it is well-settled, grants exclusive jurisdiction to the federal courts. *Massey, supra.* See also, *Greenview Trading Co. v. Hershman & Leicher, supra,* 489 N.Y.S.2d 502; *HMK Corp. v. Walsey, et al., supra,* 637 F.Supp. 710. Thus, this Court finds that whether viewed broadly or narrowly, RICO claims are subject to the exclusive jurisdiction of the federal courts.

■ In light of this finding, the Court must hold that the Wyoming state court in which this case was originally brought did not have jurisdiction over the RICO claim. As discussed above, in regard to removed cases, if the state court did not have jurisdiction over a claim, then the federal court does not have jurisdiction over the claim. Therefore, this Court does not have jurisdiction over the RICO claim, and consequently does not have pendent jurisdiction over the state claims by virtue of federal question jurisdiction. The Court must hold that this case was removed improvidently

1. **Concurrent jurisdiction:** *The County of Cook, et al. v. Midcon Corp., et al.* 773 F.2d 892 (7th Cir.1985); *Donald C. Carman, et al. v. First National Bank of Louisville,* 642 F.Supp. 862 (W.D.Ky.1986); *HMK Corp. v. John C. Walsey, et al.* 637 F.Supp. 710 (E.D.Va.1986); *Chas. Kurz Co. v. Lombardi,* 595 F.Supp. 373, 381 (E.D.Pa. 1984); *Luebke v. Marine Nat'l Bank of Neenah,* 567 F.Supp. 1460 (E.D.Wis.1983); *Cianci v. Superior Court,* 40 Cal.3d 903, 221 Cal.Rptr. 575, 710 P.2d 375 (1985); **Exclusive jurisdiction:** *Kinsey v. Nestor Exploration Ltd.,* 604 F.Supp. 1365, 1370–71 (D.C.Wash.1985); *Broadway*

*Shoes v. San Antonio Shoe,* 643 F.Supp. 584 (S.D.Tex.1986); *Massey v. City of Oklahoma City,* 643 F.Supp. 81 (W.D.Okla.1986); *Greenview Trading Co. v. Hershman & Leicher, P.C.,* 108 A.D.2d 468, 489 N.Y.S.2d 502 (1985).

2. The Court notes that these courts include the federal district court for the Western District of Oklahoma, the only other court in this circuit to have considered the issue. See *Massey v. City of Oklahoma City, supra.*

and without jurisdiction in regard to the alleged federal question.

## Diversity Jurisdiction

The defendants contend that the sole Wyoming defendant, Park Place Market, was fraudulently joined. Where removal is based on diversity as a result of alleged fraudulent joinder of non-diverse parties, the Court may remand it to State court only if the claims against the non-diverse parties are not capable of summary judgment. The Court cannot remand the case if the claims against the non-diverse parties are capable of summary judgment. *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82 (10th Cir.1964). The removing party who claims fraudulent joinder has the burden of pleading such with particularity and supporting it with clear and convincing evidence; it must prove the non-liability of the defendant as a matter of fact or law. *McLeod v. Cities Service Gas Company*, 233 F.2d 242 (10th Cir.1956); *Smoot v. Chicago, R.I. and P. Railroad*, 378 F.2d 879 (10th Cir.1967); *Winton v. Moore*, 288 F.Supp. 470 (N.D.Okla.1968). In deciding whether removal is proper, the Court must not pre-try the issues, but may pierce the pleadings and determine the basis of joinder "by any means available." *McLeod, supra*, 233 F.2d at 246. In practice, consistent with summary judgment actions, all this means is that the removing party must prove that the defendant(s) in question are not liable under the applicable law.

The Court must, thus, consider two standards when considering a motion to remand: 1) the standard of liability for the specific cause of action alleged, and 2) the extent to which the defendants have proven the non-liability. These are, respectively, the standard of liability and the standard for remand, which the Court will discuss in reverse order.

As a general principle, cases involving first amendment rights require special consideration. In *Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D.Cal.1979), *aff'd*, 710 F.2d 549 (9th Cir.1983), the Court explained that the Supreme Court has ascribed such importance to the first amendment protection of freedom of expression that it frequently overrides competing values.

"Our touchstones are that acceptable limitations must neither affect 'the impartial distribution of news' and ideas, [citations] nor because of their history or impact constitute a special burden on the press, [citation] nor deprive our free society of the stimulating benefit of varied ideas because their purveyors fear physical or economic retribution solely because of what they choose to think and publish." *Curtis Publishing Company v. Butts* (1967) 388 U.S. 130, 150–151, 87 S.Ct. 1975, 1989, 18 L.Ed.2d 1094. *Lewis, supra*, 83 F.R.D. at 461.

Based on these values, in regard to procedural questions, courts must apply exceptional, high standards which weigh in favor of federal jurisdiction, see *Old Dominion Br. No. 496, National Association of Letter Carriers, AFL–CIO v. Austin*, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974); *Ashton v. Kentucky*, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966). The *Lewis* court correctly pointed out that

These First Amendment considerations have special relevance in a removal situation when examined in light of the stated purposes of diversity and removal jurisdiction. The rationale for such jurisdiction is based upon the twin goals of avoiding local prejudice and guaranteeing the vindication of federal rights. See generally 13, 14 Wright & Miller, *Federal Practice & Procedure* §§ 3601, 3721. Success in achieving these goals is dependent upon the parties' ability to obtain "national justice" from an unbiased federal court. See, e.g. *Dodge v. Woolsey* (1856) 18 How. (59 U.S.) 331, 354, 15 L.Ed. 401; Hamilton, *The Federalist* (Wright ed. 1961) No. 80, p. 502. *Lewis, supra*, 83 F.R.D. at 461, 462.

The Court further explained that federal protection of first amendment rights is particularly at risk in circuits such as this one, see *DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir.1979), which

adhere to the so-called "voluntary-involuntary" rule which bars removal after a dismissal of a nondiverse defendant unless the dismissal was voluntarily made by plaintiff. *Self v. General Motors Corporation*, 588 F.2d 655 (9th Cir.1978). Accordingly, if after remand the state court concluded that the alleged fraudulent claim was in fact without merit under state law the case could not be removed again to the federal court. Thus deferral to the state courts for the resolution of *any* doubts concerning the validity of a cause of action is equivalent to the permanent loss of federal jurisdiction. The result, of course, would then be that a plaintiff who pleads artfully enough could always avoid this court's jurisdiction. Limited though removal jurisdiction be, it certainly was not intended to be a nullity. *Lewis, supra,* 83 F.R.D. at 462.

As we held last year in *Dworkin v. Hustler,* 611 F.Supp. 781 (D.C.Wyo.1985) (Dworkin I), this Court agrees with *Lewis* that first amendment values demand special federal protections. The standard for removal based on fraudulent joinder requires that the defendant establish the non-diverse party's non-liability with clear and convincing evidence, though the court need not grant summary judgment for that claim. At the same time, if there is a slight doubt about the defendant's non-liability, the Court may retain the case. This standard is admittedly fuzzy. In practice, as this opinion bears out, this Court requires that the defendants prove non-liability as a matter of law or fact with clear and convincing evidence, but if doubts remain, the Court will retain jurisdiction until the doubts are resolved and will then either remand or dismiss the claims pertaining to the non-diverse defendant.

In regard to the standard for liability, at issue here is the plaintiffs' claim against a distributor of a magazine for libel and other torts arising out of the contents of one of the publications it distributes. This Court had occasion to examine this question last year in *Dworkin, supra,* where the plaintiff represented parties who asserted almost identical claims against this same convenience store, Park Place Market. In that order denying remand, this Court held that safe-guarding first amendment rights is an extremely important value which may pre-empt certain procedures and may override many people's sense of offensiveness. These first amendment protections extend to distributors for, what should be, obvious reasons: if distributors are liable for the content of what they distribute, they will refuse to distribute controversial material for which they may be sued. Even if the material is constitutionally protected, distributors will be averse to distributing publications for which they might be sued, regardless of the merits of the claim, if only to avoid the costs of litigation. This is the classic "chilling effect." In order to avoid this "self-censorship", distributors must receive the same protections as publishers, writers, etc. *Smith v. California*, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); *Dworkin, supra; Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123 (2nd Cir.1984). Thus, for a distributor to be liable, and "To avoid such private censorship, courts have required a specific showing of scienter, knowledge of the defamatory material." *Dworkin, supra,* 611 F.Supp. at 786.

In this case, the libel plaintiff, Gerry Spence is a self-admitted public figure. Consequently, he must prove that his alleged libelers, including the distributor Park Place Market, acted with actual malice, the requisite scienter for libel against public figures. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Lerman, supra,* 745 F.2d 123; *Lewis, supra,* 83 F.R.D. 455; *Dworkin, supra,* 611 F.Supp. at 781. It is well-settled that to establish actual malice, the plaintiff must show that the defendant acted with "a high degree of awareness of (the statement's) probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964), or to have "in fact entertained serious doubts as to the truth of (the) publication." *St. Amant*

*v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

Based on the definition of "actual malice" that, in order to ascribe such scienter to a distributor (or to any public figure libel defendant), the plaintiff must prove that the defendant actually knew of the specific, allegedly false statement or had sufficient knowledge of the allegedly false statement to create a duty to investigate. *Dworkin, supra,* 611 F.Supp. at 787; *Lewis, supra,* 83 F.R.D. at 465. The obvious implication of this standard of liability is that the defendant must have known something of a particular statement. Knowledge of the "type" of publication, that the publication had previously printed libelous material or that it had been sued for libel falls short of the actual malice standard. This Court agrees with the Second Circuit in *Lerman* where it held that a distributor may be liable for defamation only if "plaintiff presented clear and convincing evidence that some high level employee of the corporation acted with reckless disregard of the fact that false matter had been published by (the magazine)." *Lerman, supra,* 745 F.2d at 140.[3] The Court recognizes that a "duty to investigate," which it earlier stated as part of this standard of liability, may not mean the same thing as "reckless disregard of the truth" in every context. However, in this context both phrases mean that though the defendant may not have known the exact content of the allegedly libelous statement, it knew enough about the statement so that it should have investigated the statement's truth before distributing, or continuing to distribute the publication.

This Court agrees with the standard set forth in *McBride v. Merrell Dow and Pharmaceuticals, Inc.,* 613 F.Supp. 1349, 1356–1357 (D.C.D.C.1985):

Liability for dissemination of defamatory material is not open-ended. The Courts have required a showing of special circumstances imposing a duty on the distributor to ascertain the defamatory character of the publication. *See Restatement (Second) of Torts § 581; Lerman v. Chuckleberry Publishing, Inc.,* 521 F.Supp. 228, 235 (S.D.N.Y.1981), *rev'd on other grounds,* 745 F.2d 123 (2d Cir.1984). This is to prevent the imposition of liability on an individual where he had no reason to know of any false statements. For instance, the owner of a newstand (sic) cannot be held liable for the sale of defamatory material for which he personally bore no responsibility, absent special circumstances.

Defendant, to establish its non-liability for the allegations herein must show by clear and convincing evidence that its high level employees did not know of the allegedly false statements and did not have a duty to investigate the publication.

In light of all of the above requirements and guidelines, the Court finds that very special and rare circumstances exist here in regard to Park Place Market's knowledge of the allegedly libelous statements, and the defendants have failed to meet their burden of establishing Park Place Market's non-liability by clear and convincing evidence.

This action brought by Mr. Spence is the third in a series of, to date, four lawsuits in which *Hustler* magazine, Larry Flynt and many of the other defendants to this suit are the defendants, and in which Mr. Spence is the plaintiff or counsel for the plaintiff. All of the suits allege that *Hustler* magazine contained statements which libeled the plaintiffs and gave rise to various other torts. Three out of the four suits were filed in Mr. Spence's home county of Teton County, Wyoming, in Wyoming state court, and named Park Place Market as a defendant.

At the time the issue in question appeared, the president of Park Place Market, Mark Lynch, had spent one year doing battle with Mr. Spence wherein Mr. Spence

---

**3.** The proof standard for all actions within a libel suit involving a public figure is "clear and convincing". *See Anderson, et al., v. Liberty* *Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

represented the plaintiff in a libel and civil rights and liberties action against *Hustler*, Park Place Market and others. As a result of his involvement in this suit, which included participation in and observation of depositions, the Court finds that Mr. Lynch knew of this ongoing dispute between Mr. Spence and *Hustler* and knew that his continued distribution of the magazine made him vulnerable to the possibility of future legal responsibility for its content.

Park Place Market was selling the July, 1985 issue of *Hustler* at least as of May 22, 1985. *AFFIDAVIT*, Terence D. Reardon. On May 28, 1985, a private investigator for Mr. Spence notified an employee of Park Place that the July, 1985 issue contained an allegedly libelous article and requested that the market discontinue selling that issue. On May 30, 1985, this investigator spoke to the manager of Park Place and made the same request. The manager consulted with Mr. Lynch and removed the magazine from the store's shelves later that day. *AFFIDAVIT*, Truett Clearman.

 The Court notes that the affidavits are in conflict in regard to whether the manager and Mr. Lynch knew of the Spence article prior to talking to the investigator. However, the Court further notes that it is the defendants' burden to prove by clear and convincing evidence that they are not liable. Park Place Market has not met this standard in establishing its lack of duty to investigate in light of the special circumstances herein. Jackson, Wyoming is a relatively small community in which news of Gerry Spence, one of its most famous citizens, travels fast. The dispute between Mr. Spence and *Hustler* was well-known to Mr. Lynch. This was simply not a case of an innocent magazine seller unwittingly disseminating allegedly libelous material. Rather, we have a distributor who possessed detailed knowledge of the ongoing bitter battle between *Hustler* and Spence, and who, after receiving a complaint about the magazine, failed to investigate and continued to sell it. These facts do not establish that Park Place Market lacked scienter for libel. The Court finds that these constitute special circumstances and that Park Place Market has failed to show by clear and convincing evidence that it is not liable for the alleged injury to the plaintiffs. Therefore, the Court further finds that the defendant Park Place Market has not been fraudulently joined and that there is no diversity of citizenship. Consequently, this Court does not have jurisdiction over this case based on diversity of citizenship and it must hold that this case was removed improvidently and without jurisdiction in regard to the alleged diversity of citizenship.

 The defendants have suggested, in passing, that in the event that the Court finds that Park Place Market has been properly joined, the Court should sever the claims against Park Place. The Court recognizes that under Fed.R.Civ.P. 21 it has the authority to sever claims on its own initiative. It further notes that such a decision is within the discretion of the court. In that the defendants have made no cogent arguments in support of such a move, that all of the claims arise from the same nucleus of facts, and that severing the claims against Park Place would serve no end but to create duplicative trials and to contribute to inefficient administration of justice, the Court declines this opportunity to sever the claims per the defendants' suggestion. See generally, 7 Wright, Miller & Cooper, *supra*, § 1689.

*Conclusion*

The Court, therefore, finds that it is without jurisdiction to hear this case by virtue of either federal question or diversity jurisdiction, and must conclude that this case has been removed improvidently and without jurisdiction. Therefore, it is

ORDERED that the plaintiff's motion to remand to state court be, and the same hereby is, granted, and that his case is remanded to the District Court of Teton County, Wyoming, Ninth Judicial District.